SKINNER, Executor, Respondent, vs. AMERICAN BIBLE SOCIETY
and others, Appellants.

| 92 | 209 |
|-----|-----|
| 115 | '303 |

*January 8 — January 28, 1896.*

*Wills: Execution: Attestation: Adoption of other instrument.*

1. Under sec. 2282, R. S., providing that a will to be effectual must, among other things, be "*attested and subscribed* in the presence of the testator by two competent witnesses," an instrument in writing, signed by the testator and *subscribed* in his presence and at his request — which request may be implied from circumstances — by two competent witnesses, is *prima facie*, and so far as formality of execution goes, a valid will.

2. An insufficiently executed testamentary writing may be so adopted by a later instrument which is properly executed as to become a part of the latter and with it to form a valid will or codicil.

APPEAL from a judgment of the circuit court for Milwaukee county: D. H. JOHNSON, Circuit Judge. *Reversed.*

This is an appeal from a judgment of the circuit court for Milwaukee county which affirmed an order of the county court of Milwaukee county whereby it denied probate to two instruments propounded as the codicil to the last will and testament of Mary W. Leonard, deceased.

The first of such instruments, dated September 21, 1874, is as follows: "Whereas, on the first day of January, 1872, I transferred to Rev. A. M. Stowe the sum of one thousand and five hundred dollars (1,500), to be held by him in trust, to pay the interest to me during my lifetime, and to pay the principal, at my decease,— unless, in the providence of God, I should be under the necessity of using more or less of it to supply my own imperative wants,— to some religious society or societies and for religious uses, but without defining the objects of my bounty, I now, therefore, on the first day of September, 1874, for the purpose of defining and specifying more particularly the religious objects to which such

money shall be paid after my death, I hereby make this instrument to declare the objects of such trust; and I do hereby transfer said property to said A. M. Stowe in trust, and I do hereby declare the objects of said trust as follows, to wit: First. The interest of said funds shall be paid to me during my life. Second. After my death the said A. M. Stowe shall pay the said money to the following objects, in the sums hereinafter stated: To the *American Bible Society*, $250.00; to the *Board of Foreign Missions of the Pres. Church*, $250.00; to the *Presbyterian Committee of Home Missions*, $250.00; to the *American Tract Society*, $250.00; to *Auburn Theological Seminary*, $250.00; to the *Home for Little Wanderers* and kindred institutions, $250.00. MARY W. LEONARD. Witnessed by M. A. Webster, Sept. 21, 1874."

The second of such instruments, dated October 8, 1883, and written on the same sheet with the instrument above set forth, is as follows: "Oct. 8, 1883. Since the above instrument was drawn up, I feel that the Lord, by withholding success from my dear brother for many years, thus leaving him to come into a state of utter destitution, has, in his providence, thrown him upon me to a large extent for a support, and especially so if his life is spared after he is unable to do anything to furnish himself with the comforts of life. In the meantime the interest on the above sum, not having been called for by me, has accumulated, and there is now to be added to the above sum, viz. $1,500 — $1,000. Now, as I have no other way of assisting my brother, I wish the interest of the whole sum, viz. the $1,500 and the $1,000 added, to be used for my brother as long as he lives, if he needs it; also, any part of the principal which is needed to furnish him not only with the necessaries, but also with the comforts of life; and whatever is left of the sum total after his decease and my own decease, I wish to be given to the Lord, as above stated, viz. the $1,500 to be given to the objects heretofore stated, or, if it has been necessary to use a

part of it, that the remainder be given to the six objects mentioned in the same ratio, and whatever is left of the additional $1,000 be divided into five equal parts, and that one fifth be given to the *American Bible Society*, one fifth to the *American Tract Society*, one fifth to the *Presby. Board of Foreign Missions*, and two fifths to the *Board of Home Missions*. M. W. Leonard. Witnessed by Lucy Brainard Stowe, Robert B. Perine."

The probate court considered that these instruments did not constitute a will, because (1) they were wanting of testamentary character and purpose, and (2) by reason of defective execution, and denied them probate.

Whether the will was defectively executed is a mixed question of fact and law, arising upon the evidence. Whether it is of testamentary character is to be determined by the interpretation of the instruments themselves. The evidence which tended to show the proper execution of the instruments as a will was substantially as follows: Lucy Brainard Stowe, one of the subscribing witnesses, testified: " I signed my name as a witness to that instrument in Mrs. Leonard's room, . . . in Mrs. Leonard's presence, and at her request, and in the presence of Robert B. Perine. I do not remember anything she said at the time, . . . except to request Mr. Perine and me to sign, and to hand me the pen, and showing me where to sign. I did not see her sign the instrument. Her name was written at the bottom of the instrument, before Mr. Perine and I signed our names. She saw us both sign, and we signed at the same time." Robert B. Perine, the other subscribing witness, testified: "As I came into her room, Mrs. Leonard was just rising from the table where she was signing her name. I do not remember whether anything was said by Mrs. Leonard, except, perhaps, to tell me where to sign my name. The instrument was lying on the table before me. I signed because Mr. Stowe asked me to. Miss Stowe and I signed in one an-

other's presence.   I don't remember that Mrs. Leonard made any statement to me, or in my presence, as to what the instrument was that I had just signed.   Mrs. Leonard was present and looking on when Miss Stowe and I signed our names."   Alfred M. Stowe testified: " She asked me if I would ask my daughter and Mr. Perine to come to her room. .   .   .   I did as she requested.   .   .   .   She told me that was her will, and I stated to the witnesses that she requested me to have them come to her room.   Mrs. Leonard was sitting at the table with this will or codicil before her, and when we all three went into the room, and she requested them to sign, I said, ' This is Mrs. Leonard's will, and she wishes you to sign as witnesses;' and she said, 'Yes.'   I saw the witnesses sign their names."   The subscribing witnesses do not remember that Mr. Stowe was present at their signing.

For the appellants there was a brief by *Shepard, Haring & Frost*, attorneys, and *Edward W. Frost*, of counsel, and oral argument by *Edward W. Frost*.

*Geo. E. Sutherland*, for the respondent.

NEWMAN, J.   That the two instruments, together, may constitute the last will and testament of Mary W. Leonard, it needs that the last, or codicil, dated October 8, 1883, shall have been executed with so much of formality as the law prescribes for the execution of a will.   In order to execute the instrument as a will, it must be (1) in writing; (2) signed by the testatrix; (3) attested and subscribed, in the presence of the testatrix, by two competent witnesses.   R. S. sec. 2282.   This instrument was in writing.   It is not questioned that it bears the genuine autograph signature of the testatrix, subscribed before the attestation.   It was not necessary that she should have affixed her signature in the presence of the witnesses.   Cassoday, Wills, § 114.   It was subscribed by two competent witnesses, in the presence of the testatrix.

What lacks it of being perfectly executed? Obviously, nothing, unless it appears that the subscribing witnesses failed to attest as well as to subscribe it.

It would be difficult, no doubt, to satisfactorily define that element in the attestation of a will which is not also present in the mere subscription to a will. No physical act is required in the one which is not also required in the other, and it is not clear what mental act or fact appropriate to the one is absent from the other. And the definitions of the most recent lexicographers do not make it quite perspicuous. The Century Dictionary defines an *attesting witness* to be " a person who signs his name to an instrument to prove it, and for the purpose of identifying the maker or makers." The Standard Dictionary defines *attestation* to be " the subscription by a person of his name to a written instrument to signify that the same was executed in his presence, or that it is correct." Since it is well settled in this state that it is not necessary to the validity of a will that the witnesses, at the time when they *attest* it, shall know the nature of the instrument they are attesting (*Allen v. Griffin*, 69 Wis. 529), it is not clear what, if anything, attestation is intended to add to the mere fact of subscription. However that may be, it is well settled that an instrument in writing, signed by the testator, and subscribed in his presence and at his request, which may be implied from circumstances, by two competent witnesses, is *prima facie*, and so far as formality of execution goes, a valid will. Anything further, in mere form, is not contemplated, and would be mere supererogation.

The earlier instrument, dated September 21, 1874, was never so executed as to become a will. But it cannot well be doubted that the later instrument, of October 8, 1883, being sufficiently executed to become a will, has so adopted and incorporated into itself the former writing as that it has become a part of the latter instrument. Both are testa-

mentary in character, and both together form a codicil to the last will and testament of Mrs. Leonard. *Baker's Appeal*, 107 Pa. St. 381; *Brown v. Clark*, 77 N. Y. 369; *Vogel v. Lehritter*, 139 N. Y. 223, 235; Cassoday, Wills, §§ 601–605.

*By the Court.*— The judgment of the circuit court and the order of the county court are reversed, and the cause is remanded to the county court of Milwaukee county, with directions to so modify its former order or judgment as to admit the instrument propounded as a codicil to the last will and testament of Mary W. Leonard to probate and record as a codicil to the last will and testament of the said testatrix.