## *In re* DOUGHERTY'S ESTATE.

1. WILLS—ATTESTATION—WITNESSES.

   It is a sufficient attestation of a holographic will, that the witnesses signed the instrument at the request of testator in his presence, after his declaration that it was his will, though without seeing his signature.

2. SAME—EVIDENCE—PRESUMPTIONS—EXECUTION.

   From the fact that the will was written by testator, was signed when found, was in testator's desk in an envelope ad-

dressed in his writing, from the fact that he requested the witnesses to sign it and acknowledged it as his will, being in his right mind, etc., a presumption arose that he had signed the testament before the witnesses subscribed their names.

3. Same—Directing Verdict—Execution.
The court properly submitted to the jury the question whether the will was signed by testator at the time he asked the witnesses to attest it.

Error to Ionia; Sessions, J., presiding. Submitted November 15, 1911. (Docket No. 121.) Decided January 23, 1912.

Lois J. Dougherty presented for probate an instrument purporting to be the will of John R. Dougherty, deceased. It was admitted to probate by the probate court, and Hiram Crandall and other contestants appealed to the circuit court. Judgment for proponent, and contestants bring error. Affirmed.

*Locke & Sheldon* and *R. A. Hawley,* for appellants.

*Scully & Davis,* for appellees.

Stone, J. This case originated in the probate court of Ionia county, in the matter of the probate of the last will and testament of John R. Dougherty, deceased.

John R. Dougherty died June 1, 1910, at the age of 67 years. On June 6, 1910, his widow, Lois J. Dougherty, petitioned for the admission to probate of a paper in writing as his last will and testament. This paper writing consisted of two similar sheets of ruled paper, one side only of which sheets was written on. With the exception of the names' of the witnesses, all of the writing upon the paper was in the handwriting of John R. Dougherty. This writing was found by Mrs. Dougherty on the Monday following his death in a drawer in what had been his desk. The drawer in which it was found was not locked. It was inclosed in an unsealed envelope, worn upon the edges, and addressed: "Mrs. Lois J. Dougherty, Lyons,

Michigan. Not to be opened until my death. John R. Dougherty." Mr. Dougherty had never told his wife that he had made a will, and she had never seen the envelope or its contents until after his death. The handwriting of the directions upon the envelope was that of John R. Dougherty.

The probate court admitted the paper to probate as the last will and testament of John R. Dougherty. An appeal was taken by contestants to the circuit court, resulting in a verdict of the jury that the instrument in question was the last will and testament of John R. Dougherty. In this paper, the attestation clause followed the substance of the will, without signature or space for signature between. The signature of John R. Dougherty appeared near the bottom of the last sheet of the paper, after the attestation clause, and to the right and slightly above the signatures of the witnesses. The contestants are the nephews and nieces and one sister of the deceased.

Objection was made to the probate of the will, on the ground that the will was not properly executed, and in accordance with the statute. At the trial the witnesses to the will, Howard A. Ranger and Walter H. Ranger, were sworn, and also Mrs. Dougherty. The contestants offered no proof, and, when proponents closed their evidence, moved the court to direct a verdict in favor of contestants, on the ground that the evidence did not show the will to have been properly executed in accordance with the terms of the statute. This motion was overruled, and the court submitted to the jury the question whether Mr. Dougherty had signed the paper purporting to be his last will and testament at the time he requested the witnesses to sign as such.

There is no material difference in the testimony of the two subscribing witnesses as to what was said and done at the time they wrote their names upon the paper. The witnesses were old acquaintances of Mr. Dougherty. They testify, in substance, that on March 18, 1902, Mr.

Dougherty came into their store (they being together in the back part of the store), and said:

"I have made my will. I have drawn it myself. I want you to witness it, and [with an oath] I want you to see I am in my right mind."

No other words were spoken by Mr. Dougherty while he was there. He placed the paper upon the desk, either rolled or folded, so that no writing whatever was seen, and he showed them where to sign their names. The witnesses were examined and cross-examined at great length as to the appearance of the paper, and as to other writing being in view when they signed as witnesses.

The substance of their testimony is that they saw no signature or writing. They describe the way in which the paper was folded or rolled, and testify that, had there been any writing in sight, it was their judgment that they would have seen it. When the paper was produced and offered in evidence, the word "witnesses" appeared below the signatures of the witnesses, and near the bottom edge of the paper. The witnesses were unable to testify whether or not that word was there when they signed, they both testify that they did not see or notice it, but that it might have been covered by their hands in signing; and the same is true as to a bracket at the right of the signatures of the witnesses. Counsel in their statement of facts have set forth many other things that were not said and done, but the foregoing is the substance of what was said and done as testified to by the subscribing witnesses, both of whom are positive as to the genuineness of their own signatures, and that the entire remainder of the paper as produced was in the handwriting of John R. Dougherty, deceased. It does distinctly appear that the attestation clause was not read or shown to either of the witnesses.

The charge of the court is sufficiently set forth in the assignments of error. The first two assignments of error are to the effect that the court erred in overruling contestants' motion to direct a verdict that said instrument was

not the last will and testament of John R. Dougherty, deceased, and in not directing such verdict. The third assignment of error is that the court erred in instructing the jury as follows:

"It is sufficient to say to you that the requirements of the law in this instance have been complied with and have been satisfied, if John R. Dougherty had signed this instrument at the time he presented it to the witnesses, the Rangers, and requested them to sign it as witnesses."

The fourth assignment of error is to the effect that the court erred in instructing the jury as follows:

"So that is a question for you to determine. At the time that John R. Dougherty presented this instrument in question to Howard and Walter Ranger, and requested them to witness it, had he [John R. Dougherty] then signed it? Was his signature affixed to the instrument at the time? If it was, this is a valid will."

The fifth assignment of error is to the effect that the court erred in instructing the jury as follows:

"It does not make any difference whether the witnesses Ranger saw the signature or not. If, in fact, the signature, at the time they signed the will, was affixed to the instrument, it is a valid will, and it is the last will and testament of John R. Dougherty. If the signature of John R. Dougherty was not affixed to the instrument at that time, it is not a valid will, and it is not the last will and testament of John R. Dougherty."

The sixth assignment of error is that the court erred in instructing the jury as follows:

"The fact that this instrument is in the handwriting of John R. Dougherty, and that his signature is affixed thereto, and the further fact that he presented these papers to the witnesses Ranger, and informed them that he had drawn his will, made his will, and requested them to witness it, raises a presumption that his signature was affixed to that instrument before the witnesses signed their names to the instrument. That presumption is not conclusive, and it may be rebutted, may be overcome, by other proof in the case. In determining that question, it will be your duty to take into consideration that pre-

sumption, which is a presumption of law, and also to take into consideration the other facts that have been testified to as occurring upon that occasion."

Error is claimed in the seventh assignment that the court erred in instructing the jury as follows:

" If you find from the evidence in the case that John R. Dougherty's signature was affixed to this instrument before the instrument was presented by him to the witnesses Ranger for their signature, it will be your duty to find for the proponents."

1. Considering the first and second assignments of error together, contestants claim that the proof did not establish the execution of the paper as a will, and reference is made to our statute. It is urged that the evidence did not show any execution of the paper, as the witnesses did not see Mr. Dougherty's signature; that he did not say he had signed it, and he did not sign it in their presence. It is claimed that he did not in any manner indicate that he had signed the paper, and, this being true, these witnesses did not attest the execution of the paper. Counsel upon both sides agree that the paper could not be a valid will unless it was in fact signed by the testator at the time it was presented to the witnesses for their signatures.

Is the fact that this was a holographic will or paper of any importance here ? We cannot undertake to review the numerous authorities cited by counsel in their exhaustive briefs.

In the recent case of *In re Horn's Estate*, 161 Mich. 20, our statute and the English statutes, relating to wills, are referred to and commented upon. In Schouler on Wills (3d Ed.), § 319, that author, after referring to the English statutes, being the modern wills act (1 Vict. chap. 36, § 9), and the statute of frauds (29 Car. II, chap. 3), says:

" A comparison of the language used in these two great enactments will show various important points of difference between them. * * * In the several American States will be found local statutes with corresponding

differences of detail, so that no single principle can be laid down to embrace the entire doctrine.   *   *   *   In some States, as under the old statute of frauds, they are to 'attest and subscribe' the will, and nothing is said about requiring a testator to 'make or acknowledge' the will in their presence; nor do all States insist that all the witnesses shall attest and subscribe in the presence of one another, but merely in the presence of the testator, another feature copied from the earlier English enactment. In fact, our American wills acts appear based in expression less upon the act of Victoria than that of Charles II; yet they vary quite as widely in details as do these English enactments, and the latest tendency conforms more to the statute of Victoria, or that of the New York code, which is somewhat similar."

Section 330:

"Statutes which relate to the duty of subscribing wills couple usually the words 'attest' and 'subscribe;' and these words should be distinguished.   'To attest the publication of a paper as a last will,' observed Robertson, C. J., of Kentucky, in 1840, 'and to subscribe to that paper the names of the witnesses, are very different things, and are required for obviously distinct and different ends. Attestation is the act of the senses; subscription is the act of the hand; the one is mental, the other mechanical; and to attest a will is to know that it was published as such, and to certify the facts required to constitute an actual and legal publication; but to subscribe a paper published as a will, is only to write on the same paper the names of the witnesses for the sole purpose of identification. There may be a perfect attestation in fact without subscription.' We have seen that a legal publication is now usually dispensed with, except that the testator must either sign in the presence of the subscribing witnesses, or make due acknowledgment instead; but in knowing and certifying whatever is thus made requisite consists still the attestation of the witness as distinguished from the manual act of putting his name to the paper.   By attestation we signify the act of witnessing in its full legal import; by subscription, the signing of one's name, which implies that this act has been performed."

Section 321:

" Next, we consider the signing or acknowledging of the

will before the witnesses. Upon this point is found a difference of statute expression, and hence of statute construction, which is of especial consequence where the testator signs his will, and then seeks out witnesses afterwards. The old statute of frauds required witnesses to attest and subscribe the will; which was interpreted to mean that the testator was not obliged to sign in the presence of the witnesses, provided he made before them a due acknowledgment of the instrument; and, furthermore, that a due acknowledgment in fact did not necessitate the acknowledging in words that the instrument was his will, nor apprising the witnesses in any way of the nature or contents of the instrument they were called upon to attest. A testator's declaration before three witnesses that the instrument produced and already signed by him was his will, was equivalent to signing it before them. And more than this, though he merely asked the witnesses to sign, as such, the paper he produced which bore his signature, and they did so, neither seeing his signature nor knowing what was the nature of the instrument thus attested, the statute nevertheless was satisfied; supposing, of course, that this whole transaction imparted consistently the full testamentary intent on his part."

Section 322:

"It is possible that the testator's signature was on the will, where the witnesses might have seen it, but inadvertently did not; it is possible, too, that the precise circumstances of attestation may have faded from the recollection of a witness by the time the will is presented for probate. Where all appears regular on the face of the will, a due attestation should be presumed; and direct evidence that the name of the testator was visible on the face of the will when it was produced for witnesses to sign is certainly not necessary. The result of the cases under the statute of Victoria, where acknowledging and not signing in person is relied upon, or, in other words, that the testator's signature was already upon the will when it was produced to the witnesses for their attestation, appears to be this: That, in the absence of direct evidence on the point one way or the other, the court may, independently of any positive evidence, investigate the circumstances of the case, and may form its own opinion from these circumstances, and from the appearance of the document itself, whether the name of the testator was

or was not upon it (or rather might not have been seen), at the time of the attestation."

In 1 Jarman on Wills (5th Ed.), p. 212, that author, referring to the case of *Gryle* v. *Gryle*, 2 Atk. 176, says:

"Lord Hardwicke doubted whether it was enough for the testator to say before the witness, 'This is my will,' without a resealing, or unless the testator had declared it to be his handwriting; but the doubt appears to have vanished in *Ellis* v. *Smith*, 1 Ves. Jr. 11, where the question is stated in general terms to be, whether a testator's declaration before three witnesses, that it is his will, was equivalent to signing; and the conclusion, therefore, of the judges who decided that case in favor of the validity of the will, amounted to an affirmation of the sufficiency of such a declaration.

"Later adjudications placed the point beyond all doubt by going much farther; these cases having decided that where a testator, who had previously signed his will, merely requested the witnesses to subscribe the memorandum of attestation, though they neither saw his signature, nor were made acquainted with the nature of the instrument they attested, the will, nevertheless, was duly executed according to the statute. 'When we find,' said Tindal, C. J., in *British Museum* v. *White*, 3 M. & Payne, 689, 6 Bing. 310, 'the testator knew this instrument to be his will; that he produced it to the three persons, and asked them to sign the same; that he intended them to sign it as witnesses; that they subscribed their names in his presence, and returned the same identical instrument to him, we think the testator did acknowledge in fact, though not in words, to the three witnesses that the will was his' "—citing *Roberts* v. *Welch*, 46 Vt. 164.

An examination of *White* v. *British Museum*, *supra*, will show that the witnesses did not see the signature of the testator upon the paper, and did not know whether it was there at the time they signed it.

Following these authorities, the Supreme Judicial Court of Massachusetts, in *Ela* v. *Edwards*, 16 Gray (Mass.), 91, decided in 1860, passed upon a state of facts somewhat similar to the instant case. The following proof was offered of the execution of a will entirely in the hand-

writing of the testatrix and signed by her, to which three other persons had signed their names in the usual place for the signatures of witnesses, but without any attestation clause. The person whose name came first testified as follows:

" She passed me a package of papers; asked me to sign my name as a witness; told me where to sign, on the left side."

The person whose name was last testified:

" She said she wanted me to witness a document; that she had been making a little disposition of her effects, and would like to have me sign it as a witness. She put her finger to the line where she wished me to sign."

It appeared that the person whose name was signed between the names of those two was out of the jurisdiction of the court, but had resided in the immediate neighborhood of the testatrix at the time when the will purported to have been executed, and it was also proved that the signature was genuine. Held, that this was sufficient proof, in the absence of any evidence of fraud, of an execution of the will in conformity with the requirements of the statute.

Justice Dewey, at page 93 of 16 Gray (Mass.), says:

" But the case of *Hogan* v. *Grosvenor*, 10 Metc. 56 [43 Am. Dec. 414], in reference to one of the attesting witnesses to that will, is so exceedingly like the present in regard to the question of attestation by two of the witnesses to the present will, that it is proper to refer to it more particularly. In that, as in the present case, the will was in the handwriting of the testator. The testator there took the paper from his desk, asked the witness to sign it, and pointed out the place where he wished him to put his name. The witness did so, not knowing what the paper was, and not noticing the signature of the testator on the paper. This was held a good attestation of the will. * * * As was said by the court, in *Dewey* v. *Dewey*, 1 Metc. 354 [35 Am. Dec. 367]:

" ' It can hardly be supposed that the testator, who was by his own active agency procuring the authentication of the instrument

by the requisite witnesses, would have omitted the first steps necessary to its due execution, viz., the signature by himself.'"

We cannot, without prolixity, further quote from this leading case.

In Rood on Wills, at section 272, that author says, after referring to the statute of frauds:

"Remembering that nothing is necessary beyond what the statutes require, except testamentary capacity and intention, it is pertinent to ask what is necessary, by reason of the requirement that the will be attested. Evidently 'attest' and 'subscribe' were used by the lawmakers to indicate different things. Both are required of witnesses. 'Attest' ordinarily means to bear witness; to take notice. * * * To attest as a witness to a will is therefore to observe, perceive, discern, and take notice of what is done in executing the will. The witness subscribes with his hand; he attests with his eyes and ears."

Section 280:

"Lastly, it was settled that attestation under the statute of frauds did not require the witnesses to see the testator's signature on the will, nor know that it had been signed by him. [Referring to the English cases already cited.] Wherever the statute does not require witnesses to attest the signature, but only to attest the will, their attention need not be called to the signature. [Citing cases.] It is no objection that the testator so concealed the signature that the witnesses could not see it. [Citing *Gould* v. *Theological Seminary*, 189 Ill. 282 (59 N. E. 536.)] But if it was not in fact signed, there was no will to attest."

The author cites in a note the case holding the contrary doctrine—*Tobin* v. *Haack*, 79 Minn. 101 (81 N. W. 758), referred to and quoted from by contestants.

At section 282, the same author says:

"It may be admitted that if witnesses subscribe as such at the request of the testator, express or implied, there is a sufficient attestation without anything more; but this is only because the express or implied request by the testator to them to so subscribe necessarily includes in itself an admission to them that the instrument is his, and accepted and approved. Therefore, attesting a will under

the statute of frauds, and under the statutes of most of the States, consists of learning from the testator in some way that the particular writing witnessed is finally approved by him "—citing *In re Claflin*, 75 Vt. 19 (52 Atl. 1053, 58 L. R. A. 261); *In re Kohley*, 200 Ill. 189 (65 N. E. 699).

See, also, section 283, and cases cited. We refer to, as supporting this doctrine, *Gould* v. *Theological Seminary, supra; Hobart* v. *Hobart*, 154 Ill. 618, 619 (39 N. E. 581, 45 Am. St. Rep. 151). We cannot quote from these cases at length.

Counsel for contestants cite the case of *Luper* v. *Werts*, 19 Or. 122 (23 Pac. 850), in support of their position. A careful reading of this opinion will disclose that in its facts it is not controlling of the instant case. In the opinion, this language is used:

"If it appeared from the evidence bearing upon the point involved that the decedent acknowledged or adopted the signature to the instrument as his own, in the presence of the witness Peyser, either from the testimony of the latter or from that of any other witness, or that, by any sign, motion, conduct, or attending circumstance, he gave said witness to understand that he had already subscribed the instrument, I should not hesitate to hold, as I am at present advised, that it was a sufficient acknowledgment; but I fail to discover any evidence which would warrant such a conclusion. The evidence shows that the decedent, while the said witness was subscribing his name to the instrument, maintained 'mere silence,' which is not enough. *Haynes* v. *Haynes, supra* [33 Ohio St. 598, 31 Am. Rep. 579]. If the decedent had said to the witness Peyser, 'This is my will,' or if the witness Beard had said, in the presence of the decedent and Peyser: 'This is the will of Mr. Werts; he has signed it, and wants you to subscribe you name to it as a witness'—or used any language of that import, the contention of the proponent's counsel might have been tenable."

In our opinion, the trial judge did not err in declining to direct a verdict for the contestants.

2. The remaining assignments of error are argued together by contestants, and they claim that from the testi-

mony there was no presumption that decedent had signed the will; that if such presumption could be said to have arisen it was rebutted; and that the attestation clause raised no presumption, for the will was not signed when it was written. If contestants mean by this last claim that the will was not signed on the occasion of the writing of the attestation clause, we would say that the claim is mere assumption. We think that the fact that this was a holographic will is of some importance. The presumption that it was signed when written is, we think, greater than would have been the case, had the will been prepared by another person, as a mere unfinished paper. The jury saw the paper. It is claimed by proponents that it bore intrinsic evidence of having been written and signed with the same pen and ink, and at the same time. These were matters for the jury. In aid of the presumption that the will was signed when presented to the witnesses, are the following facts: It was signed when found. It was found in the drawer of testator's desk, in an envelope bearing directions in the handwriting of testator. The entire will is in his handwriting, including the attestation clause. His own declaration that he had made his will. He had drawn it himself. He wanted the witnesses to witness it. He was in his right mind. He produced it from his own custody. He would not be presumed to perform an idle act. He was unattended and competent and rational. He was at the time giving his business matters attention. The paper was folded. The space he pointed out where he asked the witnesses to sign was small. The manner of folding the paper was such that one sheet covered the other, except the space where the witnesses signed, so that no signature of testator was seen upon the paper. The witnesses could not swear that the signature was not upon the paper. There was no fraud claimed in the transaction.

Will the facts that the witnesses did not see the testator sign his name, and did not see his name on the paper, and that he did not expressly say to them that he had signed

it, as matter of law, overcome the presumption that it was signed when presented to the witnesses, under the circumstances? We think not.

We find no error in the charge of the court. We find nothing in the decisions of this court, cited by counsel, which is in conflict with the conclusion we have reached.

The judgment of the circuit court is affirmed.

McAlvay, Blair, Ostrander, and Bird, JJ., concurred.