WILL OF GRIFFITH: ENRIGHT, Respondent, vs. GRIFFITH and others, by guardian *ad litem,* Appellants.

*April 25—May 15, 1917.*

*Wills: Validity: Execution: Attestation: Presumption: Signing by witnesses before testator: Testamentary capacity: Undue influence: Evidence: Error in description of property: Costs: Allowance to guardian ad litem.*

1. An express request by the testator that the witnesses sign his will is not essential, an implied request or an assent to the signing being sufficient.

2. A formal attestation certificate or clause is not required by the statute (sec. 2282, Stats.) and is unnecessary.

3. The appearance, on the face of a will, of regularity raises a presumption of due execution which should prevail in the absence of clear and satisfactory evidence to the contrary.

4. The statutory regulations as to the execution of wills are intended to conserve the inherent right to dispose of property by will and should be administered so as to effect that purpose and not to defeat the right. Mere informality, where the essentials required are substantially satisfied, is immaterial.

5. Although the better way is for the witnesses to a will to sign after the testator has signed, that order of signing is not essential to the validity of the will if all sign when all are present and as part of one continuous transaction.

6. Findings by the trial court in this case that the testatrix had testamentary capacity, understood the contents of the will, and did not act under any undue influence, are *held* to be sustained by the evidence.

7. The fact that property of the testatrix, consisting of a lot in Milwaukee at 488 Van Buren street, was, by mistake of her nurse who wrote the will, described therein as 480 acres on Van Buren street, was immaterial.

8. No costs and no compensation payable out of the estate (under secs. 4041a, 4041b, Stats.) are allowed in the supreme court in this case to the guardian *ad litem* of unsuccessful contestants of a will; nor are costs awarded against such guardian or those whom he represents.

APPEAL from a judgment of the circuit court for Jefferson county: GEORGE GRIMM, Circuit Judge. *Affirmed.*

Proceedings were commenced in the county court for pro-

bate of an instrument purporting to be the last will of Agnes Griffith, deceased. It was refused. The proponent, *Julia Enright,* sister of the deceased, appealed to the circuit court. The result was that the decision of the county court was reversed and judgment entered directing probate of the will. These, in substance, among others, were found as facts: About 7:30 p. m. April 9, 1914, Agnes Griffith, aged forty-nine years, died at her residence in Waukesha county, Wisconsin. She was survived by her husband, Henry Griffith, four minor children, William Enright, her brother, a married man of family, and *Julia Enright,* an unmarried sister, the proponent. The purported will, dated April 9, 1914, about 12 o'clock noon, at the residence of the testator, was duly signed by her by making her mark thereto in the presence of Thomas Palmer and Lydia Hillary, who then, by her implied request, attested her signature, as witnesses, in her presence, and in the presence of each other. The instrument was, in every respect, duly executed as the last will and testament of Agnes Griffith. She was not under the influence of any person. The instrument was her free and voluntary act and expressed her wish as to the disposition of her property. She had about $350 in value of personal property and a city lot on Van Buren street, Milwaukee, Wisconsin, on the south half of which there was a double house, known as 488 on said street. She inherited the property from her mother. It was worth about $5,000. She was of strong will and positive character. The sister was of middle age, having no special occupation and no means of support, nor property other than personalty of the value of about $400, and a lot inherited from her mother, on which was constructed one half of the double house aforesaid, worth about $5,000. She had, in part, supported herself by keeping boarders. Her relations with the testatrix had always been very close and affectionate. She had largely cared for the testatrix and her family in sickness. She and the children of the latter were

mutually affectionate. The testatrix's husband was worth about $35,000, largely accumulated during their married life. He obtained $600 from her about the time of the marriage which was never repaid. It was incorporated into his property. At the time of her decease he was in middle age, in good health, and with fair prospects of accumulating more property. When the will was made, she was suffering from appendicitis, complicated with peritonitis from which she died a few hours after the transactions. She took to her bed April 3, 1914. On each day from this time up to the time of making the will, she was in full possession of her mental faculties. , In the morning of the day of her death, she said she felt easier and requested her nurse, who was alone with her, to get pencil and paper, which was done. She then dictated what she wanted written and the nurse wrote. She did not own any acre property on Van Buren street and knew that her property was known as 488 Van Buren street in Milwaukee. By mistake the nurse wrote 480 acres instead of 488 on Van Buren street. About an hour after the writing occurred, at her request, a doctor, she named, was sent for to perform an operation on her. Shortly after sending for the doctor, she was visited by Father Palmer, who administered to her the last rites of the Catholic church, of which she was a member. Then she requested all who were present, except Father Palmer, to retire and the nurse to be sent for. The husband did not at once retire and she signified to him that she desired him to do so. He complied. When there were present with her only Father Palmer, and the nurse, she requested the writing to be produced and handed to Father Palmer. That was done. It was then executed as before stated. She then told Father Palmer to take it and see that it got into the proper hands. She then expressed a wish to have her children brought up in her religion. About 1 o'clock p. m. thereafter she kissed them good by. She took no further active part in affairs while preparations were be-

ing made for the contemplated operation except to ask what was being done.    Some hours later she recognized her brother and sister-in-law.    She expired about 7:30 p. m. thereafter.

There was evidence produced as to all the matters referred to.    The will was written by Miss Hillary on a paper she had for use as a nurse.    There was testimony to the effect that she wrote what Mrs. Griffith requested her to.    There was no proof that the writing was read to Mrs. Griffith.    It was signed in due form, her name with her mark appearing below the writing and to the right, and the names of the witnesses a little lower down and at the left, indicating that they signed last.    All occurred at one transaction.    Father Palmer testified that he wrote her name and then she made her mark and that she delivered the paper to him after it was fully executed.    The writing was as follows:

"April 9, 1914.

"I will Agnes Griffith will and bequeath to Sister *Julia* my real estate 480 acres on Van Buren Street, also all my personal things, to have and to hold without restriction.

"AGNES GRIFFITH    X    Her mark.

"Witnesses: Thomas Palmer.

"Miss Lydia Hillary."

The conclusion of law reached was that the county court erred in disallowing the will and, as before indicated, judgment was rendered accordingly.    The minor children, by their guardian *ad litem,* appealed.

*V. H. Tichenor* of Waukesha, guardian *ad litem,* for the appellants.

For the respondent there was a brief by *Hennessey, Hennessey & O'Boyle,* attorneys, and *Vincent D. Hennessey,* of counsel, all of Milwaukee, and oral argument by *Vincent D. Hennessey.*

MARSHALL, J.    It is first suggested that the will is fatally defective because of the witnesses not having signed at the

request of the deceased.   True, there was no evidence of an
express request for the signing; but that was not essential.
The court found that there was an implied request and that
is amply sustained by the evidence, and further, as is the fact,
that the testatrix assented to the signing. Either is suffi-
cient.   *Will of Meurer,* 44 Wis. 392, 399; *Skinner v. Ameri-
can Bible Soc.* 92 Wis. 209, 213, 65 N. W. 1037; *Huff v.
Huff,* 41 Ga. 696, 703; *Coffin v. Coffin,* 23 N. Y. 9; *Gross v.
Burneston,* 91 Md. 383, 46 Atl. 993; *Burney v. Allen,* 125
N. C. 314, 34 S. E. 500; *Savage v. Bowen,* 103 Va. 540, 49
S. E. 668; *Allen's Will,* 25 Minn. 39; 40 Cyc. 1115.

It is next insisted that the finding as to the witnesses hav-
ing subscribed their names to the instrument after it was
signed by the testatrix is contrary to the evidence.    There is
some conflict on that matter, though considering all the cir-
cumstances, we should hesitate to hold that the finding is
against the clear preponderance of the evidence.    It is doubt-
ful, at least, whether such a holding would be justified by
the record.    The will appears on its face to have been reg-
ularly executed.    While there is not a formal attestation
certificate or clause, that is unnecessary since the statute does
not expressly require such.    It merely provides that a will,
to be valid, must be "signed by the testator or by some per-
son in his presence and by his express direction, and attested
and subscribed in the presence of the testator by two or more
competent witnesses in the presence of each other."    Sec.
2282, Stats.

The attestation and subscription feature is satisfied by the
witnesses signing their names to the instrument to prove that
it was signed by the testator as maker.    As said in *Skinner v.
American Bible Soc., supra,* "Anything further, in mere
form, is not contemplated, and would be mere supereroga-
tion."

The importance of conserving the constitutional right to

dispose of property by will is such that the efficiency of an attempt to exercise such right should not depend on any "doubtful or inconclusive parol proof" as said in *Lewis's Will,* 51 Wis. 101, 113, 7 N. W. 829.    The appearance, on the face, of regularity should be regarded as involving a presumption of due execution so strong as to prevail, in the absence of clear and satisfactory evidence to the contrary. That presumption stands in this case, supported by some corroborating circumstances against some conflict in the oral testimony of the subscribing witnesses.

With what has been said, we may pass the question of whether the finding objected to has sufficient support in the evidence without definitely deciding the matter, since we have concluded that the order of signing is not vital, where that of the testator and that of the witnesses occur, as in the particular instance, when all are present and as part of a transaction then occurring in its entirety.    This court does not appear to have directly passed upon that question, though it has been referred to in previous cases,—*Lewis's Will, supra; Allen v. Griffin,* 69 Wis. 529, 35 N. W. 21.    Some courts have held to the contrary, but, generally, under statutes somewhat different than ours, and, in effect, giving undue dignity to mere formality.

As indicated by the quotation from the statute, it does not expressly require that the testator shall first sign and then the witnesses "attest and subscribe" though it is, doubtless, the better and the ordinary way.    The regulations in the written law are for the purpose of conserving the inherent right to dispose of property by will.    Like all such regulations, they should be administered so as to effect their purpose, not in such technical way as to involve unnecessary difficulties in the enjoyment of the testamentary right and so as to be liable to operate to the destruction of it though the intention of the testator be clear.    Mere informality, where

the essentials required are substantially satisfied, is immaterial.

The foregoing has ample support in the general treatment of the subject of the execution of wills under our statute, in the decisions of this court to which we have referred, and by decisions upon the precise point in courts elsewhere referred to by counsel for respondent. *Horn's Estate,* 161 Mich. 20, 125 N. W. 696; *Limbach v. Bolin* (Ky.) 183 S. W. 495; *Kaufman v. Caughman,* 49 S. C. 159; *Gibson v. Nelson,* 181 Ill. 122, 54 N. E. 901; *Rosser v. Franklin,* 6 Gratt. (Va.) 1; *Miller v. McNeill,* 35 Pa. St. 217, 222; *O'Brien v. Galagher,* 25 Conn. 229; *Cutler v. Cutler,* 130 N. C. 1, 40 S. E. 689; *Shapter's Estate,* 35 Colo. 578, 85 Pac. 688; *Silva's Estate,* 169 Cal. 116, 145 Pac. 1015, 1017.

The state of the law on the subject discussed is well stated in 40 Cyc. at page 1127, referring to a long line of authorities:

"The rule obtaining in England and some of the United States is that it is indispensably necessary to the valid execution of a will that the signature of the witnesses be affixed subsequent, in point of time, to that of the testator; while the rule prevailing in other jurisdictions is that, in the absence of an express statutory requirement that the witnesses must sign after the testator, the fact that part or all of them sign before is immaterial when all are present at the same time and their acts are part of one continuous and complete transaction."

That the rule is as above indicated, in England, and is followed in jurisdictions in this country where the distinction between the nature of the testamentary right, in the former, and in the latter, is not appreciated, is most natural. In England there is no testamentary right, strictly so called. There is only a testamentary privilege, while here there is such right,—one of inherent character, protected by the fundamental law, and regulated by statute for the purpose of

reasonable exercise and conservation.    *Will of Dardis,* 135 Wis. 457, 115 N. W. 332; *Nunnemacher v. State,* 129 Wis. 190, 108 N. W. 627; *Will of Rice,* 150 Wis. 401, 445, 446, 136 N. W. 956, 137 N. W. 778.

In view of the nature of such right as recognized here, the purpose and the letter of the statute, and especially the weight of authority in this country, we unhesitatingly hold that, where the signatures of the witnesses and the testator form parts of one continuous transaction and all actors are present from first to last, the mere order of affixing the signatures is not vital to the validity of a will; though, as before stated, the orderly and far the better way is for the signature of the testator to precede in time the signature of the witnesses.

The next suggestion made is that the testatrix did not know or understand the contents of the instrument.    That seems to be involved in the next point made that she was not of testamentary capacity, and the last one, that she acted under undue influence exercised by her sister.    All those matters are specifically covered by the findings of fact which are amply sustained by the evidence.

These features of the evidence fully warranted the findings.    There was an entire absence of any showing that Mrs. Griffith was susceptible to undue influence, or that there was any opportunity for, or disposition to exercise such influence by her sister or any one else.    Then there is the undisputed evidence that the idea of making the will was solely that of the testatrix and that she carried it out without suggestion from, or consulting with, any one; that she directed the person who did the writing for her, using paper and pencil which were conveniently at hand, to act in the matter, and such person then wrote, in the testatrix's presence and in absence and without knowledge of any other person, at her dictation, what appears in the body of the instrument; that later, at her request, the paper was produced, all persons were excluded by her from the room except the one who had prepared the

writing and Father Palmer, the priest whom she had requested to be present, and then that execution of the instrument occurred and it was given by her to Father Palmer with express, definite, and proper directions as to what to do with it. All these circumstances evince clearly an intelligent formation of a purpose, uninfluenced by any one and a like execution of it. The fact that the lot devised was referred to for a description with the addition of the word "acres" is not material. The particular property intended is without question. There is nothing unreasonable about the disposition of property because it was left to the sister while there were several minor children and a husband of whom the testatrix was very fond.

The manner in which the property was willed is satisfactorily explained by the facts that the latter was possessed of an ample fortune and of good prospects for the future; that the beneficiary was an only sister to whom the testatrix was warmly attached and who was alone in the world, quite along in years, and of a very meager means of support; and the further circumstance that the lot devised, and one owned by the sister, adjoined and were occupied by a building, the whole having formerly belonged to the mother from whom each derived her interest. It was quite natural that the testatrix should have considered that her part should go to the sister and the former entirety be restored instead of the latter being left in danger of having to deal with a stranger.

There is no reason, as we view the case, why any costs or allowance should be made to the guardian *ad litem* under sec. 4041*a* or sec. 4041*b*, Stats., and therefore none will be allowed in this court, but such guardian and those he represents may well be protected from being burdened with costs notwithstanding the failure of the appeal. It is within the power and according to the practice of the court to do that where justice seems to require it.

*By the Court.*—The judgment is affirmed. No costs or

allowance is made to either side in this court, but the respondent is required to pay the clerk's fees; this disposition not to prejudice the competency of the circuit court or probate court, having jurisdiction of the administration of the estate, to make such allowance for costs and expenses incurred by the proponent in establishing the will as such court may deem just, payable out of the estate or otherwise.

A motion for a modification of the judgment so as to allow to the guardian *ad litem* a reasonable sum for his services and disbursements on the appeal, payable out of the estate, was denied on June 12, 1917.