ESTATE OF MCCARTHY : MCGLYNN and others, Contestants, Appellants, vs. PARFREY, Proponent, Respondent.

*December 4—December 30, 1953.*

For the appellants there was a brief and oral argument by *Lorin L. Kay* of Richland Center.

For the respondent there was a brief by *Brindley & Brewer,* and oral argument by *Elaine E. FitzGerald* and *E. E. Brindley,* all of Richland Center.

BROADFOOT, J.   The objectors contend that the trial court erred in finding that the genuine signature of the deceased was in fact affixed to the document.  Mrs. Parfrey testified that she had seen Mr. McCarthy sign his name to checks several times and was familiar with it, and that it resembled the signature she had seen him affix to checks.  The cashier of a bank compared the signature upon the instrument with a signature card in the bank's records, and based upon such comparison he testified that the signature upon the instrument was the signature of Mr. McCarthy.  He did not see Mr. McCarthy sign the signature card at the bank.

It is now contended that these witnesses were not experts, and that their testimony does not satisfy the minimum requirements for credibility and weight.  Regardless of how qualified expert witnesses on handwriting are, the ultimate determination of the genuineness of a signature is for the trier of the facts.  Even though the testimony of Mrs. Parfrey and the bank cashier is eliminated, a contract bearing Mr. McCarthy's signature was introduced in evidence and his signature thereon was identified as his genuine signature by the attorney who drafted the contract.  By a comparison of the signature on the instrument offered for probate with that

on the contract the trial judge could make his own determination, and that is sufficient to sustain his finding.

The objectors also contend that the signature purporting to be that of Mr. McCarthy was not placed on the propounded instrument until after the subscribing witnesses had signed. No one saw Mr. McCarthy affix his signature to the instrument, and the objectors infer from the testimony that it was impossible that deceased could have affixed his signature thereto at any time prior to presenting it to the subscribing witnesses. They base their conclusion upon the fact that no one saw him sign the document; that he had to sign with his left hand and that he had some difficulty in writing with his left hand; that he did not tell the subscribing witnesses that he had signed the instrument; and that they did not see the signature thereon. It is their contention that he could only have signed it after he returned to his home. On direct examination Mrs. Parfrey testified as follows:

"*Q.* Did he take this instrument after you had finished typing it? *A.* Yes, sir.

"*Q.* It was not signed at that time? *A.* No, it was not.

"*Q.* Where did he take it? *A.* Across the street to the McGillivrays.

"*Q.* And did you see it after he brought it back? *A.* I did, and looked at it to see if it was properly signed and properly witnessed.

"*Q.* Was his signature on there when he brought it back? *A.* Yes, it was.

"*Q.* Is that Earl T. McCarthy's signature? *A.* Yes, it is."

On cross-examination she testified as follows:

"*Q.* And when you typed it did you then hand the original to Mr. McCarthy? *A.* I did.

"*Q.* And I understand that your testimony is that he then proceeded across the street to the McGillivray home? *A.* That is right.

"*Q.* You did not accompany him, did you? *A.* No, sir.

"*Q.* About how long was he gone? *A.* Well, I would say ten, fifteen minutes. You can't exactly tell. I wouldn't say any longer than fifteen minutes.

"*Q.* It was a relatively short time? *A.* That is right.

"*Q.* Did you watch him go across the street? *A.* I did.

"*Q.* Did you see him get up to the door of the McGillivray home? *A.* No.

"*Q.* You just saw him go to the other side? *A.* As he walked across the street—I went along about my business.

"*Q.* And when he left you carrying the paper he had not signed it, had he? *A.* What?

"*Q.* When he left you carrying the paper he had not signed it, had he? *A.* Why, no.

"*Q.* When he returned that morning from his trip to the McGillivray home, did you see him coming across the street? *A.* No.

"*Q.* When were you first aware he had returned home? *A.* When he came in the door.

"*Q.* And he had the paper with him? *A.* That is right.

"*Q.* Do you recall whether he had more than one paper with him? *A.* No, I don't.

"*Q.* He might have? *A.* He might have.

"*Q.* At the time that he brought it back was the paper folded or creased? *A.* No.

"*Q.* Did he have it in his hand when he came in the house? *A.* He did.

"*Q.* And it was then and on that occasion that the paper was folded and put in the envelope marked Exhibit 2? *A.* Shortly after he came in he handed it to me. I was the one that folded it and put it in the envelope. He was paralyzed in his right arm and could only use his left arm. He couldn't fold the paper very easily. . . .

"*Q.* Did he make any statements to you on his return from the McGillivray home before the paper was put in the envelope? *A.* I don't recall that he did. I think he went immediately into his room and got the envelope, and then he put it right in the envelope, sealed it, and asked me to mark it."

From this testimony the objectors infer that Mr. McCarthy must have signed the instrument at the time he stepped into his room to get the envelope. As to this contention the trial court, in its memorandum decision, said:

"On the testimony presented in this case the court is forced to conclude that the signature of Earl T. McCarthy affixed to said will is in fact the signature of said Earl T. McCarthy and does so find.

"It follows that,

" 'If the genuineness of testator's signature is shown the presumption of regularity of execution will prevail, although the witnesses did not remember whether or not the will was signed by testator when they signed as witnesses.' 2 Page on Wills (lifetime ed.) page 468; *Will of Mueller,* 188 Wis. 183.

" 'It is generally held that if testator acknowledges the instrument in question as his will it is sufficient under the statute.' *Estate of Lagershausen,* 224 Wis. 479, 272 N. W. 469; *Will of Johnson,* 225 Wis. 140, 273 N. W. 512; *Will of Home,* 231 Wis. 227, 284 N. W. 766.

"In *Will of Johnson,* 225 Wis. 140, above, the court said,

" 'It has been declared by this court that in the absence of clear proof that the witnesses to a will signed it before the testator did, it will be presumed that the testator signed it first' and cases cited therein.

" 'Even in the absence of an attestation clause, appearance of regularity on the face of a will involves a presumption of due execution so strong as to prevail in the absence of clear and satisfactory evidence to overcome it.' *Will of Griffith,* 165 Wis. 601, 163 N. W. 138.

" 'The law is liberal in presuming the due execution of a will. Every reasonable presumption will be indulged in in favor of due execution and attestation of the instrument offered for probate.' 57 Am. Jur. par. 866.

"The evidence is undisputed that the two subscribing witnesses affixed their signatures to the instrument in question in the presence of each other and that of the deceased. The

signature of Earl T. McCarthy, from the testimony of Mrs. Parfrey, was on the instrument when it was placed in an envelope. This instrument offered as the last will of deceased was found in the lockbox of the deceased after his death. The court is convinced that the presumption of regularity has not been overcome by evidence in this case."

The objectors' final contention is that the instrument was not regularly executed and the trial court erroneously indulged in a presumption that it was. They contend that it was the burden of the proponent to prove affirmatively that the will was properly executed and that the presumptions referred to in the decisions cited by the trial court in its memorandum decision are not available until this burden has been met. They attempt to distinguish the cases cited by the proponent and the trial court from the present case.

The facts in the different cases cited are not identical with those in this case, but the rules of law there stated are applicable. Once the signature of the deceased upon the instrument is found to be genuine, the presumption of regularity attaches and, as the cases indicate, this is a strong presumption. The objectors offered no testimony to dispute the genuineness of the signature and, of course, they could not produce anyone who saw Mr. McCarthy sign his name. There can be no doubt that the signature was genuine. The presumption attached, and the same has not been overcome in any way by the objectors. The findings of the trial court are supported by the record.

*By the Court.*—Order affirmed.