KENNETH DUNHAM, petitioner.

Barnstable.   November 28, 1955. — June 6, 1956.

Present: QUA, C.J., RONAN, WILKINS, WILLIAMS, & WHITTEMORE, JJ.

*Will*, Execution.

It was error to disallow an instrument as a will for want of proper attesta-
tion by one of the three witnesses where it appeared that the testator,
having previously signed the instrument, handed it to that witness
and requested him to witness it as the testator's will, and that, although
the testator's signature was not visible by the witness in signing
because of the manner in which the instrument was folded, the testator's
signature was not "actively hidden or concealed by the testator from
the witness" and the witness had control of the instrument when he
signed and could have seen the testator's signature "simply by un-
folding" the instrument but did not do so.

PETITION, filed in the Probate Court for the county of
Barnstable on August 18, 1954, for proof of an instrument
as the will of Harry A. West, late of Provincetown.

A decree disallowing the instrument was entered by
*Sparrow*, J. The petitioner and certain beneficiaries under
the instrument appealed.

*Richard S. McCabe* & *James W. Luby*, for the appellants,
submitted a brief.

RONAN, J. This is an appeal from a final decree of the
Probate Court for Barnstable County disallowing an instru-
ment offered for probate as the will of one Harry A. West
on the ground that the said instrument "was not properly
attested by the third witness and that consequently it was
not properly executed."

We recite the report of the material facts filed by the
judge. It appears that at the request of West one Dunbar
and his wife, both understanding that a paper which West
produced was his will, signed their names as witnesses in
the presence of West. When they signed, the alleged will

was folded above West's signature which was visible and
was seen by both of the Dunbars when they became wit-
nesses. No person was present at the time other than the
Dunbars and West. Later in the evening or the next day
West requested one Thomas to witness an instrument which
West told him was his will. The paper was folded cross-
wise, leaving the signatures of West and Dunbar under the
fold but leaving visible the signature of the second witness,
Mrs. Dunbar. Thomas observed her signature but he did
not see the other two signatures although he was not re-
strained or prevented from lifting the paper in order to see
what was above his signature. He did not do so. He signed
on the line below that of Mrs. Dunbar and then gave the
paper back to West. The judge found that the signatures
of West and both of the Dunbars were on the instrument
when Thomas signed, that the paper was under the control
of Thomas when he signed, that he could have seen West's
signature "simply by unfolding the paper, and that said
signature was not actively hidden or concealed by the
testator from the witness, although it was hidden from his
gaze by the position of the folded paper and he failed to
exert the slight muscular effort necessary to see it." The
judge disallowed the instrument as a will because it was not
properly attested by Thomas.

Our statute, G. L. (Ter. Ed.) c. 191, § 1, which is pat-
terned upon the English statute of frauds, 29 Car. II, c. 3,
§ 5, provides that a person of full age and sound mind "may
by his last will in writing, signed by him . . . and attested
and subscribed in his presence by three or more competent
witnesses, dispose of his property . . . ." The testator is
not required to sign in the presence of the witnesses, for the
instrument has been held to be validly executed if the
testator acknowledges his signature which he has previously
placed thereon by exhibiting the paper to the witness, stat-
ing that it is his will, and requesting the person to sign it as
a witness. It was early decided in *Dewey* v. *Dewey*, 1 Met.
349, which relied upon the English cases of *White* v. *Trustees
of the British Museum*, 6 Bing. 310, and *Wright* v. *Wright*,

7 Bing. 457, and a careful analysis of the statute, Rev. Sts. c. 62, § 6, which did not differ materially from the present statute, G. L. (Ter. Ed.) c. 191, § 1, in the aspect with which we are now concerned, that the fact that one of the subscribing witnesses did not observe the testator's signature did not invalidate the execution of the will where the signature was visible to the witness. That decision has been followed and recently affirmed in *Barber* v. *Henderson,* 304 Mass. 3, with an ample citation of authorities. This last cited case is distinguishable from *Nunn* v. *Ehlert,* 218 Mass. 471, and cases following it, *Hawkes* v. *Hawkes,* 230 Mass. 11, *Leatherbee* v. *Leatherbee,* 247 Mass. 138, and *Tredick* v. *Bryant,* 269 Mass. 50, on the ground that in those cases the testator "does not acknowledge his signature upon the instrument when he conceals that signature from the witness, and that under such circumstances there is no valid attestation." *Barber* v. *Henderson,* 304 Mass. 3, 5. The judge in the case at bar found that there was no intentional concealment of the signature from Thomas. It was not "actively hidden or concealed" from Thomas although the instrument rested in such a position that the testator's signature was not visible. We infer from the findings of the judge that the instrument was handed to Thomas for his signature and that he put the instrument in the position in which it was when he signed. He then gave the will back to the testator. The testator had acknowledged the instrument as his will when he produced it and handed it to Thomas, after Thomas had assented to become a witness.

It was said in *Hogan* v. *Grosvenor,* 10 Met. 54, 56, "His acknowledgment that the instrument is his, with a request that they attest it, is sufficient"; and in *Nickerson* v. *Buck,* 12 Cush. 332, 342–343, that "it has been repeatedly held that a declaration by the testator to the witness, that the instrument is his will, or even a request by him to the witness to attest his will, or other varied form of expression implying that the same had been signed by the testator, are either of them quite sufficient" proof of a proper attestation.

The failure of a witness to see the testator's signature,

which is written on the face of the instrument which the testator declares to the witness is his will, due to the fact that the signature of the testator is unintentionally withdrawn from the view of the witness by a fold in the instrument, does not render void the execution of the instrument as a will. See *Betts* v. *Lonas,* 172 Fed. (2d) 759; *Will of Johnston,* 225 Wis. 140; Paige, Wills, § 349; 127 A. L. R. 384.

*Decree reversed.*