OF

## THE STATE OF NEW JERSEY.

## 1918-1919.

EDWIN ROBERT WALKER, ORDINARY.

FREDERIC W. STEVENS, EUGENE STEVENSON, EDMUND B. LEAM-
ING, VIVIAN M. LEWIS, JOHN H. BACKES, JOHN
GRIFFIN, JOHN E. FOSTER AND MERRITT
LANE, VICE-ORDINARIES.

In the matter of the appeal from a decree of the Hudson county
orphans court denying probate to a certain paper-writing
propounded as the last will and testament of JESSIE G.
SAGE, deceased.

[Decided March 21st, 1919.]

A declaration by a testatrix that she has signed an instrument which
she publishes as her will is not an acknowledgment of the signature to
the will as required by statute unless the witnesses were able to see the
signature.

On appeal from Hudson county orphans court.

*Mr. Richard Boardman,* for the appellant.

*Mr. Harry Lane,* for the respondent.

STEVENSON, VICE-ORDINARY.

1. I concur with the learned judge of the Hudson orphans court in his opinion that the instrument propounded as Mrs. Sage's will was neither signed by her in the presence of the witnesses nor was the "making" of the signature acknowledged by her in the presence of the witnesses.

It is not disputed that Mrs. Sage brought the paper, all in her handwriting, to the witnesses and sufficiently published the paper as her will in their presence, and that they subscribed their names thereupon as witnesses in her presence and in presence of each other.

The narrow question is whether it may be inferred from the evidence, in the absence of any attestation clause, that Mrs. Sage acknowledged her signature in the presence of the witnesses, which testamentary ceremony is made by statute the alternative to the making of the signature in the presence of the witnesses. Mrs. Sage did not subscribe the will. It is claimed, however, on behalf of the appellant that she sufficienty declared her name, which she had written in two places in the first paragraph of her will, to be her signature to the will. The paper purporting to be a will appears now entirely in the handwriting of Mrs. Sage, with the exception of the signature of the two witnesses. It is not denied that if Mrs. Sage filled in her name in the introductory part of the instrument with intent to make her signature to the will, and when the subsequent testamentary ceremonies were performed, acknowledged the signature within the meaning of our statute, the execution of the instrument as a will would be in conformity with our statute, although the testatrix did not subscribe the instrument. *In re Phelan's Estate, 83 N. J. Eq. 316; S. C. affirmed, 83 N. J. Eq. 647.*

The important circumstance pertaining to the attempted execution of this alleged will is that Mrs. Sage brought the paper to the witnesses so folded that they did not, and in fact could not, see her alleged signature. The witnesses subscribed

their names and Mrs. Sage placed the paper in her bag and took it away with her without the witnesses being able at any time to see her signature.

2. Let us concede for the purposes of this case that if Mrs. Sage had exhibited to the witnesses an instrument bearing on its face her name, and had then published the instrument as her will, and thereupon the two witnesses had signed their names in the manner prescribed by the statute, that such conduct on her part would have been in substance and effect an acknowledgment to the witnesses that what they saw with their own eyes was her genuine signature to the will.   See *30 Am. & Eng. Encycl. L.* (*2d ed.*) *589,* and particularly the cases cited in *note 7; Ludlow* v. *Ludlow, 35 N. J. Eq. 480, 489; S. C. affirmed, 36 N. J. Eq. 597; . Stewart* v. *Stewart, 56 N. J. Eq. 761, 764; Baskin* v. *Baskin, 36 N. Y. 416.*

Under the wide admission which is only made *arguendo* that the exhibition to the witnesses by a testator of an instrument apparently bearing his signature, accompanied by a distinct publication of the instrument as the testator's will, amounts to the acknowledgment of the signature prescribed by our statute, I am still of opinion "that there is no sufficient acknowledgment unless the witnesses either see, or are able to see, the signature." *30 Am. & Eng. Encycl. L. 589.* The great weight of authority sustains the proposition that where the testator purposely prevents the witnesses from seeing his signature, even the positive declaration by the testator that he has in fact signed the instrument, will be of no avail; much less can the acknowledgment in such case be inferred from the testator's declaration that the instrument is his will. In view of the elaborate discussions of this subject in the English and American cases cited below, it would seem to be unnecessary to discuss at length the reasons which I think sustain the principle which I have stated. It may be well, however, to refer to the repeated declarations by our courts that the signing of the will is a testamentary ceremony quite distinct from the publication of the will. There is no alternative to the publication, but the statute does prescribe an alternative to the signing in the presence of witnesses, viz., that the signature be acknowledged by the testator in the presence of the witnesses.

Where, as in this case, the instrument is so folded that the witnesses cannot see the signature, the most solemn declaration by the testator that in fact the will bears his signature is merely a statement on his part, and all that the witnesses can attest is that statement. They are not witnesses to whom the testator has acknowledged a certain specific signature as his own signature. They can merely attest that the testator informed them that the will was signed by him. As a matter of fact, in such case the will may have been left unsigned by mistake or it may have been purposely left unsigned so that the testator at any time in the future, in fraud of the statute, could affix his signature or elect to die intestate.

It is not claimed that Mrs. Sage expressly stated to the witnesses or to anyone that the instrument had been signed by her. The argument is that the production of the paper, and her declaration to the witnesses that it was her will, under the circumstances, constituted conduct equivalent to an acknowledgment of the signature. Counsel for the appellant contends that Mrs. Sage's declaration "This is my will," was equivalent to "This is my signed will." Counsel for the appellant states in his brief that "a careful scrutiny of the will itself shows that in all probability she (Mrs. Sage) kept the paper which is offered for probate, for a period of years after it was written before she filled in her name at the head of the paper." The evidence, I think, fully sustains this proposition. Mrs. Sage made two drafts of a will in her own handwriting, and one of them appears with two blanks in the first paragraph, manifestly intended to be filled in with her name in case she should conclude to execute the instrument as her will. Conceding that Mrs. Sage regarded the writing of her name with her own pen in these spaces, or one of them, as her signature to the will, the significant fact remains that this so-called holographic will remained unsigned by Mrs. Sage for a long period of time, and there is absolutely no evidence when it was signed. We may surmise or think it probable that Mrs. Sage believing that she could sign her will by filling in the blanks, would not have left those blanks unfilled when she declared that the document was her will and caused the witnesses to subscribe their names, but

there is no evidence that Mrs. Sage did not procure the attestation of the witnesses first, and, subsequently, at her convenience, insert her name in the spaces which she had left for that purpose. The case would bear a different aspect if the paper signed by the witnesses showed on its face that it had been completely written *currente calamo* by Mrs. Sage. In such case there would be no evidence that the body of the instrument had been written first and the signature or signatures inserted subsequently. I see no ground for the affirmative conviction that Mrs. Sage's signature or signatures had been inserted in the will before she brought it to the witnesses which is not mere surmise —a presumption of a fact which the law requires to be proved. Even if Mrs. Sage had said, "This is my signed will," that would not present legal proof of her signature if the witnesses did not and could not see any signature.

The argument of this case on both sides proceeded, I think, with the express or tacit admission that there was evidence from which the inference could be drawn that Mrs. Sage had filled in her name in the reserved spaces when she presented the document to the witnesses for their attestation, and, therefore, I prefer to deal with the case with that presumption which certainly is exceedingly favorable to the appellant. The narrow question to be considered therefore is whether, in the absence of any attestation clause, there is any evidence that Mrs. Sage, by word or by conduct of any kind, acknowledged what in fact was a signature made by her to her will. I have nothing to add to the lucid discussion of the learned judge of the Hudson orphans court, in which he reaches the conclusion, without referring to the fact that the paper was folded so as to conceal any signature of Mrs. Sage from the witnesses, that there was no sufficient declaration by word or conduct that she had signed the paper, or that her signature was affixed to it in any way. I intend in this additional opinion merely to deal with the proposition that under our law a mere declaration by the alleged testator that he has signed an instrument which he publishes as his will, is not an acknowledgment of the signature unless the witnesses see or are able to see the signature. A brief glance at the history of our statutes regulating devises and testaments throws light, I think, on this question.

The fifth section of the statute of frauds (*29 Car. II. c. 3*) abolished verbal devises and provided that all devises of lands "should be in writing and signed by the party so devising the same, or by some other person in his presence and by his express direction, and should be attested," &c. After a period of some uncertainty the English courts appear to have finally decided that an acknowledgment of the signature to the witnesses satisfied the statute. (*1 Jarm. Wills (R. & T. ed.) 208 ch. 6 § 1.*

The New Jersey act of 1713 required devises to be in writing and to be "signed and published by the testator in presence of three subscribing witnesses." *Bradf. 35; Elm. Dig. 595.* It was settled by our courts that the exhibition of the signature by the testator to the witnesses, and a positive declaration by him that the same was his own signature, did not meet the requirements of the statute—that the signature must actually be made in the presence of the witnesses. *Den v. Milton (1830), 12 N. J. Law 70; Den v. Matlack (1839), 17 N. J. Law 86; Combs v. Jolly (Prerogative Court, 1835), 3 N. J. Eq. 625.*

It will be observed that the English statute of Charles allowed an alternative to the signature of the testator in the presence of the witnesses, viz., the writing of the testator's signature by some other person in his presence and by his express direction. The New Jersey statute provided no alternative. Neither statute expressly recognized the acknowledgment of the signature as the equivalent of making the signature in the presence of the witnesses. The establishment of this equivalent was reached in England by construction, no doubt recognizing the established custom supported by convenience and common sense of having a signature to a document attested by witnesses after the maker of the signature has exhibited the same to the witnesses and declared that the signature was his. There is an exact equivalence in point of fact. No doubt cases of hardship were liable to arise under the New Jersey statute which ignored a well-settled custom pertaining to the execution of solemn instruments and the exact equivalence of the two methods by which a party executing an instrument could procure that fact to be attested by witnesses.

When the English law of wills covering devises of real estate and bequests of personalty was passed in 1837, the propriety of allowing the exhibition of the signature, and contemporaneous acknowledgment of it as the equivalent of signing, was expressly recognized. The same course was taken in the New Jersey statute of wills passed in 1850. *P. L. 1850 p. 280.* The statutes regulating wills in other states quite generally exhibit the same feature. In this manner the statute law of England and America was made to conform with the natural habits and customs of men.

If, by any construction of our statute, the declaration by a party attempting to make a will to the witnesses whom he called in, to the effect that the instrument had been signed by him, when in fact the witnesses could not possibly see any signature, should be held to be an acknowledgment of the signature, it seems to me quite evident that a third method of having a testator's signature attested would be established, not by any means equivalent to the others, but far less forceful and significant as a testamentary ceremony.

No New Jersey decision dealing with the subject under consideration has been cited by counsel or has in any way come to my knowledge. The following are a few only of the decisions of courts of other jurisdictions which support the view which I have expressed. *Lewis* v. *Lewis (1854), 11 N. Y. 220.*

The New York statute of wills construed in this case is, as to the matter now under consideration, the same as our own. The case seems to be on all fours with the one at bar. The testator folded the will so that the witnesses could not see whether it was signed by him or not. The opinion of the court (at p. 225) contains the following paragraph:

"If the party does not subscribe in their presence [the presence of the witnesses], then the signature must be shown to them and identified and recognized by the party and in some apt and proper manner acknowledged by him as his signature."

*In the Matter of the Probate, &c., of Mackay, deceased (1888), 110 N. Y. 611.*

In this case Judge Earle delivered the unanimous opinion of the New York court of appeals directly holding that where the

testator so folded the instrument that the witnesses could not and did not see his signature, or any part thereof, the will was not properly executed, however distinctly it was published. The court held (at *p. 614*) that "there would undoubtedly have been a formal execution of the will in compliance with the statute if the witnesses had at the time seen the signature of the testator to the will." This decision is directly in point.

*In re Goods of Mary Gunstan; Blake* v. *Blake (1882), L. R. 7 P. D. 102.*

In this case the English court of appeal unanimously sustain the probate court and hold that an acknowledgment of a signature to an instrument purporting to be a will is insufficient unless the witnesses are able to see the signature. Master of Rolls Jessel approves Mr. Jarman's proposition that "there is no sufficient acknowledgment unless the witnesses either saw or might have seen the signature, not even though the testator should expressly declare that the paper to be attested by them is his will," and then adds his opinion that "it is not sufficient even if the testator were to say, 'My signature is inside the paper,' unless the witnesses were able to see the signature."

One of the most recent elaborate discussions of the subject in hand may be found in the opinion of Judge Loring, speaking for the Massachusetts supreme court in *Nunn* v. *Ehlert (1914), 218 Mass. 471.* The Massachusetts statute has by construction been held to require as the alternative to the making of the signature of the testator in the presence of the witnesses, the acknowledgment of the signature by him in the presence of the witnesses, thus giving as much force in New Jersey to Massachusetts decisions as can be attributed to decisions of the English courts or the New York courts. The five judges of the Massachusetts court who heard the case last cited hold directly that "a will is not attested lawfully by a subscribing witness if the person who intended and attempted to execute the instrument as his will concealed the signature from the subscribing witness so that he could not see it or know that it was there." Judge Loring states (at *p. 72*) that the case "presents the question whether a will is duly attested when the signature of the deceased is hidden from the witnesses when they attest and sub-

scribe the will." It is this question which the court unanimously answers in the negative. I agree with the Massachusetts court in disregarding the *Michigan Case (In re Dougherty's Estate, 168 Mich. 281)*, in which it appears an "opposite conclusion" was reached.

The decree of the Hudson orphans court will be affirmed.