## Ex parte EDWARD HENRY.

1. The statute authorizing the summoning of a jury to try any question of fact touching the validity of a will (Clay's Digest, 304, § 35), vests in the court trying the issue a more enlarged discretion than is ordinarily exercised by courts in trying issues in civil causes.

2. The statute requiring the subscribing witnesses to a will to sign it in the presence of the testator, applies only to devises, and has no application to bequests; and therefore a will containing an attestation clause, but not attested, though·void as to the realty, may be good as to the personalty, if it was really intended by the testator to operate as his will irrespective of the attestation.

3. Where a will of real and personal property, though·containing an attestation clause, is not attested, the presumption is, that it is incomplete and is not the will of the testator; but this presumption is slight, and may be rebutted by slight circumstances; as if the testator was prevented from finishing it by the act of God, or if he intended it to operate in its present form.

4. The validity of a will of realty and personalty was contested on three grounds, viz., because it was not signed by the subscribing witnesses in the presence of the testator; because the testator, at the time of its execution, was of unsound mind and memory; and because it was procured by fraud and undue influence on the part of the testator's wife; the jury having returned a verdict finding it invalid generally, the court, on motion of the contestant, inquired on what ground their verdict was predicated, to which one of their number replied, "principally on the ground that it was not signed by the witnesses in the presence of the testator;" and the court then ordered them to retire and find another verdict: *Held*, that the contestant could not have a *mandamus* for judgment on this first verdict.

5. Where a verdict, finding the will invalid, is rejected by the court on the motion of the contestant himself, he cannot afterwards have a *mandamus* for judgment on it.

6. Where the jury return a general verdict finding the will invalid, but state to the court that their verdict is not predicated on any one of the grounds of contest, and that they cannot agree upon any one of them, their verdict may be rejected.

APPLICATION FOR MANDAMUS to the Circuit Court of Coosa, in the matter of a·contested will; the Hon. Thos. A. Walker presiding in the court below, to which the cause had been removed from the Court of Probate of Talladega. The application is based on the following facts, as appears from the bill of exceptions contained in the transcript which is submitted as a part of the application:

William McPherson propounded for probate a paper pur-porting to be the last will and testament of Edward Henry, deceased, which was contested by Edward Henry, the petitioner. The counsel for the parties agreed, in open court, that the proponent should be regarded as tendering, in legal form, this issue : " that the paper propounded for probate is the last will and testament of said Edward Henry, deceased, and that the same is valid as such last will and testament ;" and that the contestant should be permitted to offer evidence to the three following points, as though they had been legally presented in proper form, viz., that said paper is invalid as the last will and testament of said Edward Henry, deceased, 1st, because the same was not signed by the subscribing witnesses in the pres-ence of the testator ; 2nd, because, at the time of making said last will and testament, said Edward Henry was of unsound mind and memory ; and, 3rd, because said paper was obtained by fraud and undue influence on the part of the testator's wife. It was further agreed, that the contestant might present each and all of these points in the charge of the court to the jury, and that each party should have the right to except.

After the evidence had all been submitted, and the cause had been argued by the counsel, the court proceeded to charge the jury on the rules of law applicable to the case, and instructed them, " if they found the will valid, to say, ' We, the jury, find this paper valid as the last will and testament of Edward Henry ;' but if they found against its validity, they should say, ' We, the jury, find this paper invalid as the last will and testament of Edward Henry,' and should state the ground on which they found it invalid, because of the first, second or third ground of contest, or for all of them, or any two of them, and which." The jury then retired, and returned the following verdict : " We, the jury, find the paper invalid as the last will and testament of Edward Henry, deceased." Thereupon, the counsel for the contestant requested the court to inquire of them upon what ground they found their verdict ; which the court did, and one of them answered, " Principally on the ground that the will was not signed by the witnesses in the presence of the testator." The counsel for the proponent then insisted, that the jury should retire and designate on what ground they based their verdict ; but the counsel for the contestant asked

leave to withdraw their inquiry, and objected to the jury again retiring, and insisted that the verdict should be received. The court instructed the jury, to retire again and pass upon all the issues, and to state in their verdict upon which ground they found the will invalid; and to this the contestant excepted.

The jury returned again, with the following verdict : " We, the jury, find the paper invalid as the last will and testament of Edward Henry, because the same was not signed by the witnesses in the presence of the testator." On motion of the contestant, the court inquired of them, whether they had passed upon the other issues, as to the unsoundness of mind and undue influence; and the jury replied, through their foreman, that they had not. At the instance of the contestant, the court instructed them to retire again, and to pass upon the other issues if they could ; to this proponent objected, and insisted that the last verdict should be received, but his objection was overruled, and the jury retired again.

A third verdict was returned, which was in these words : " We, the jury, find the paper invalid as the last will and testament of Edward Henry, deceased." On the motion of the proponent, the court again inquired, whether this verdict was found on all the issues, and whether they had passed on all the issues; to which the foreman replied, that they had not, and further stated that they could not agree upon any one of the issues. The court again ordered them to retire and try to agree upon a verdict; the contestant insisting upon the first and last verdict, and the proponent insisting on the second.— The jury, not being able to agree upon a verdict, were finally discharged, and a mis-trial was entered ; and the contestant now asks for a *mandamus* to compel the rendition of a judgment on one or all of these verdicts.

An opinion was delivered, refusing the motion, at the last term of the court; but on the petitioner's application for a re-hearing, it was withdrawn.

Belser & Rice, for the motion :

1. The law confers upon the jury the right to find a general verdict, or a special verdict, as the jury may elect ; and although the court may instruct the jury to find a special verdict, yet if a general verdict is rendered, it is valid and lawful.—3 Bouv.

Inst. 496 ; The State v. Jones, 5 Ala. 666 ; 30 E. C. L. R. 135 ; People v. Croswell, 3 Johns. Cases 367, 376 ; 3 Ad. & El. 506 ; 10 Metcalf 282 ; 3 Murph. 571; 9 Mass. 388 ; 5 *ib.* 436.

2. Verdicts are to be favorably construed; and if the courts can collect the clear meaning of the jury from the verdict, they will work it into form. If the verdict find the whole that is in issue, and something more, the verdict is good. If a jury state the evidence on which they find the verdict, it is surplusage, and will not vitiate the verdict. The reasons of finding a verdict are not to be received, or considered as part thereof.—Tippin v. Petty, 7 Porter 441 ; Rockfeller v. Donnelly, 8 Cowen 652; 3 Term R. 659; 12 Pick. 15 ; 30 Maine 337 ; 8 Pick. 170.

3. Every verdict is general or special. A general verdict is one where the whole matter in issue is found; e. g., guilty or not guilty—assumpsit or non-assumpsit—the will or not the will. A special verdict is where the jury find the naked facts as proved, submitting a question of law flowing therefrom to the court, praying their advice, and concluding conditionally, that if the court are of opinion that the plaintiff had cause of action, they find for him ; otherwise for the defendant.—3 Bouvier's Institutes, 496, *et seq.*

4. Not one of the verdicts found in this case, can be regarded as a special verdict. 1st. The matter in issue, to-wit : whether the paper propounded for probate is valid or invalid, as the last will and testament of Edward Henry, is not found specially ; 2d, the jury do not find matter of fact only ; 3d, the jury do not submit to the court any question of law flowing from the facts ; 4th, they find generally, that the paper is invalid, as the last will and testament of Edward Henry.

5. A verdict on only one of several issues is good, if its finding comprises the merits of the several issues.—Rockfeller v. Donnelly, 8 Cowen's R. 651, 652; Petrie v. Hannay, 3 Term Rep. 659.

6. Where there are several issues, and the finding of one is decisive of the cause, the jury may be discharged from finding upon the other issues, whether the parties consent or not.—French v. Hanchett, 12 Pick. Rep. 15, and cases therein cited.

7. Where a jury render a verdict which substantially decides

the whole matter in issue, the court may put it in form, or may send the jury out to put it in form; but neither the court nor jury can disregard such verdict. And if a second verdict is rendered by the same jury, differing in substance from the first, the second is void, and the first shall be good.—Winslow v. Draper, 8 Pick. Rep. 170; Snell v. Bangor Navigation Co., 30 Maine R. 337.

8. Whatever may be the form of the issue, its substance, in every such case as this, is, whether the contested paper is valid or invalid as the last will and testament of the deceased; and the party claiming the contested paper to be the will, holds the affirmative, and should be required first to prove every controverted fact necessary to the probate of it.—Clay's Dig. 304 § 35; ib. 363 § 6; Rogers v. Thomas, 1 B. Mon. 390.

9. Whether a will of personal property only may not be valid without any subscribing witnesses, is not a material question in this case; for conceding it may, yet this is one of the cases "in which something more than a mere compliance with legal requirements was made necessary to the efficacy of the will, by the testator himself, he having chosen to prescribe to himself a special mode of execution." In such case, the law is, if the testator afterwards neglects to comply with the prescribed formalities, the inference is, that he had not fully and definitely resolved on adopting the paper as his will.—1 Jarman on Wills, marginal pages 93 to 97; 4 Mass. 460; Waller v. Waller, 1 Grattan's Rep. 454; Jones v. Kea, 4 Dev. 301; 1 Williams on Ex'rs 48, 49; Edelyn v. Hardy, 7 H. & J. 61; Kendall v. Kendall, 24 Pick. 219; Bolling v. Bolling, 22 Ala. Rep. 826.

The testator might consider attesting and subscribing witnesses "as an essential part of the execution." If so, although he was mistaken in point of law, it proves he did not consider the paper as complete or as executed, if no witnesses subscribed and attested in his presence, as in this case.—Avery v. Pixley, 4 Mass. Rep. 460; 7 H. & J. 61.

If a will professes to pass both realty and personalty, and for the want of attestation is inoperative as to the former, " a strong intention of the testator may be inferred that it should not operate at all, unless it be available in every respect, or at least, as to both kinds of estate." But still, it is a question for

the jury, whether he intended the paper to operate as far as the law would allow it in its present form, or intended that, unless the law would regard it as effectual in all its dispositions, it should not be in any.—Jones v. Kea, 4 Devereux's (Law) Rep. 301 ; Kendall v. Kendall, 24 Pick. Rep. 219.

These questions having been passed on by the jury, as shown in each of the three verdicts, and the jury having found in each verdict the invalidity of the will, judgment ought to have been entered rejecting the paper. In the second verdict, the jury not only find the fact, that the paper " was not signed by the witnesses in the presence of the testator" ; but they also, in addition thereto, " find the paper invalid as the last will and testament of Edward Henry."

The finding that the paper was invalid, may be regarded as a finding that the testator intended that the will should not operate at all, unless it was operative as to the realty as well as the personalty, and that it was inoperative as to the realty as well as the personalty, for the reason stated.

The paper is invalid, according to each verdict.—Edelyn v. Hardy's Lessee, 7 H. & J. 61.

This court is bound to exercise a superintending control over all inferior jurisdictions, and to see that the right of trial by jury remains inviolate. It should interfere by *mandamus*.— Commonwealth v. Porter, 10 Metcalf 282 ; 30 E. C. L. R. 135 ; 9 Mass. 388 ; 5 *ib.* 436 ; 3 Murph. 571.

WHITE & PARSONS, *contra :*

1. The writ of *mandamus* will be granted, only where there is a specific legal right, and no other legal remedy adequate to enforce that right.—*Ex parte* Jones, 1 Ala. 15 ; 6 Ala. 511.

2. This court will not revise the action of an inferior tribunal which involves a matter of discretion.

3. Is this matter of discretion ? We insist it is. The court may grant a new trial. It may retrace its action during the term.—Johnson v. Luttemore, 7 Ala. 200. In this case, the court say : " Whatever may have been the reasons which induced the court to retrace its action, and recall its judgment, its effect was to leave the case as it originally stood." This is what the court, in terms, directs to be done.

4. But, we insist, that the action of the court was proper. It

is the right of a party to know whether one or all the issues are found against him, when his interest is involved in knowing. —Bouvier's Institutes, vol. 3, 500 ; 7 Porter 234 ; 2 Wash. 272 ; 2 Wheaton 221 ; White v. Baily, 14 Conn. ; 6 Humph. 45 ; 1 Met. 383 ; 12 Pick. 15.

CHILTON, C. J.—The counsel for the motion, being dissatisfied with the opinion expressed at the last term of this court, filed his application for a re-hearing ; and not having time to give it that examination which the importance of the case and the principle involved demanded (the application having been made on the eve of the adjournment of the court), we deemed it best to set aside the judgment, and hold the case under advisement, to afford us an opportunity for a more thorough investigation.

We have accordingly looked into the authorities cited, and many others not brought to our notice by the counsel ; and the result of our investigation has but the more confirmed us in the correctness of the conclusion at which we previously arrived.

We are satisfied that the facts of the case presented by the record, accompanying the motion, do not justify us in granting the relief prayed for: The statute under which this contest originated, reads as follows : " When the validity of any will shall be contested, or doubts may arise as to its validity, or as to any facts, which, in the opinion of the judge, it may be necessary to have ascertained by the verdict of a jury, before awarding any order, judgment, or decree, such judge, at any stated session, or on any sitting held in vacation, according to the provisions of this act, may forthwith cause a jury to be summoned and empannelled, to try such issues, or inquire of such facts, as, under his direction, shall be submitted to their decision, and shall cause them to be sworn in such form as the case may require." Clay's Digest 304 § 35.

It is manifest from the reading of this section, that the Legislature designed to vest in the court trying the validity of a will, a more enlarged discretion than is ordinarily exercised by courts in trying issues in civil causes. The issues, in ordinary cases, are educed by the pleadings of the re-

spective parties ; but in cases of wills, they are to be made up under the direction of the probate judge. If, in the opinion of the judge, it is necessary to have any fact ascertained, as preliminary to admitting the will to probate, this section of the act gives him the right to have the verdict of a jury upon that fact.

The pleadings in this case are not made out in form ; but it was agreed, that the proponent should be regarded as tendering a formal issue, that "the paper propounded is the last will and testament of Edward Henry, deceased, and that the same is valid as such last will and testament" ; and the contestants, by agreement, were "to be permitted to offer evidence to the three following points, as though the same had been legally and duly presented at length and in proper form, namely : That said paper is invalid as the last will and testament of Edward Henry, deceased ; first, because the same was not signed by the subscribing witnesses thereto in the presence of the testator, Edward Henry ; second, because, at the time of making said last will and testament, said Edward Henry was of unsound mind and memory; and, third, because said paper was obtained by fraud and undue influence on the part of Angelina Henry, wife of the said Edward Henry. And it was further agreed, that said contestants might be permitted to present each and all of these points in the charge of the court to the jury," &c.

Such is the form in which the issues were presented. Now, without attempting to determine upon the legal effect of this will, since upon this motion it would not be proper to construe it, we entertain no doubt, that a will may be good as to the personalty, and void as to the realty. The statute requiring the subscribing witnesses to sign the will in the presence of the testator, applies only to devises of real estate, and has no application to bequests of personal property; so that the first ground of objection *might* be true, and yet the will be valid as to the personal property, if it was really intended by the testator to operate as his will, irrespective of the attestation.

We fully concede the doctrine, that where a will, both of real and personal property, contains an attestation clause, unexecuted by the witnesses, the presumption is, that it was

left incomplete, and is not the will of the supposed testator. But this presumption is slight, and may be rebutted by slight circumstances; as if the testator was prevented from finishing it by the act of God, or that he intended it to operate in its present form.—See 2 Phil. 178; 1 Add. Rep. 158; 1 Hagg. 252; *ib.* 551; *ib.* 596; *ib.* 698; 3 *ib.* 207. So, also, in Buckle v. Buckle, 3 Phill. Rep. 323, the testamentary paper was found sealed up at the death of the testator, with an appearance that he did not intend to open it: *held* sufficient to rebut the presumption of its invalidity as a testamentary paper. So, also, if he recognize it as his will.—1 Hagg. 550; 1 Williams on Ex'rs 51–2, marg. Especially would this presumption be rebutted, if the testator, in his last illness, had signed it *as his will*, and called upon witnesses to attest it as such, who attested it informally. In such case, it is our opinion, that it would devolve on the party asserting its invalidity, to show that the testator regarded it as invalid by reason of such informality.

The jury found the will "invalid" by their first verdict; and, at the request of the contestants' counsel himself, inquiry was made of them by the court, as to which one of the grounds of contest they predicated their finding upon. The reply was, " principally on the ground that the will was not signed by the witnesses in the presence of the testator."— Here, then, the court was informed, by means to which the contestants could surely raise no objection, that the verdict was principally upon a ground which might, or might not, render the will, in judgment of law, invalid, according to circumstances. If the ground upon which the jury "principally" based their verdict, was the sole predicate for it, as they indicate by their second finding, the court was left in doubt as to what judgment to render. But when the second verdict was brought in, viz., that the will was invalid, because the subscribing witnesses failed to sign in the presence of the testator, the contestants, who now are moving to have judgment upon some one of these verdicts, requested that the court should send the jury back, to try the other issues as to the soundness of testator's mind and the alleged undue influence; and they were accordingly sent back. Why, we ask, were they sent back? The reason is obvious. The

Ex parte Edward Henry.

special finding, that is, the *facts found*, went only to the invalidity of the will as respects the land; and although the jury say invalid generally, this is a conclusion of law, not warranted by the facts found without more, and the court, and not the jury, must judge of the law,—"*ad quæstionem juris, non respondent juratores, sed judices.*"—3 Thomas' Coke 391, top page. The court had the right to disregard the conclusion, and enter judgment according to the law arising upon the facts.

But there were other grounds of contest going to the whole will. These must be passed upon, to enable the court to dispose of the whole subject-matter of the litigation, and hence the jury were sent back,—sent back at the contestants' request, and it is not for *him* to say that this was improper. Even where the court has no power to grant a new trial, but does so, and the party submits to the new trial, he cannot have a *mandamus* for judgment on the first verdict (Weavel v. Lasher, 1 John. Cases 241); much less, where the court, upon his motion, had rejected the verdict itself.

The third verdict finds the legal conclusion, but the court is certified, that it is not predicated upon either one of the grounds of contest; and this the court rejected, as, under the statute above referred to, and the circumstances of this case, the judge had a perfect right to do.

In Parrott v. Thacher, 9 Pick. 431, Parker, C. J., in delivering the opinion of the court, said, "We certainly do not mean to encourage the practice of questioning jurors as to the grounds of their opinions; but where there are distinct grounds upon which the verdict may be given, perhaps it is not improper to ascertain which they adopted, as there may be little or no evidence upon one and sufficient upon another; and if it appear that they did not agree upon either of the grounds, I do not see how their verdict can stand, unanimity being required. If there are three distinct grounds upon which an action may be maintained, all independent of each other, and four only of the jury agree upon each, I do not see how they can amalgamate their opinions, and make a legal verdict of them." If this be correct with respect to ordinary trials, it applies with much greater force to cases like the present, where the facts are to be ascertained under the direction of the court.

We grant, that, under the general law governing trials, the

jury are never bound to find a special verdict. They are bound, however, to receive the law from the court, when given them in charge, and they may always apply the law to the facts, and find a general verdict, which is thus composed of law and fact. But as respects contests of this character, which involve the validity of wills, the statute, for obvious reasons, gives the court the power to require the jury to find facts, and the issues are to be tried by the jury under its direction. The will embracing both real and personal property, he must be certified by their finding as to all the facts necessary to enable him to pronounce upon it as to both; otherwise, with the means at hand of being enlightened, he would be compelled to grope in the dark, and possibly to pronounce a judgment neither satisfactory to himself, nor just to the parties. The jury retired each time with specific directions from the court, as to the manner of their finding, requiring them to pass upon each one of the grounds on which the contestants relied for invalidating the will. They persisted in a refusal to comply, and the court decided that their verdict was insufficient and refused to receive it. To reverse this decision of the court, and to cause judgment to be entered on either of the verdicts, by awarding a *mandamus*, and this upon the application of the party at whose instance inquiry was first made as to the facts found by the jury, and upon whose motion the second verdict was rejected, would be virtually to repeal the statute before mentioned,—would be to render a judgment upon an uncertain and unsatisfactory verdict: would, in effect, make the jury triers of the law, leaving the court to grope in the dark for the facts ; would be to trample upon the discretion of the primary court, who, had the verdict been received, had a right to set it aside and grant a new trial, which right, being discretionary, is not subject to revision in this or any other court; in short, it would be an unwarranted assumption of jurisdiction, unsanctioned by principle, and unsustained by any precedent, either English or American.

There are a few cases, it is true, which seem to countenance the idea of forcing verdicts upon courts, which have the right, in the exercise of their sound discretion, to set them aside, and award new trials.—*Ex parte* Caykendoll, 6 Cow. Rep. 53, in which the court below had received improperly the affidavits of some of the jurors as to a mistake made by them in making up

their verdict, and had awarded a new trial; the Supreme Court of New York granted a *mandamus*, for vacating the order, and for judgment on the verdict. The point in question was not discussed, either by the counsel or the court, and no authority, except as to the impropriety of receiving the affidavits of jurors to impeach their verdict, was cited. Suppose the primary court, in answer to the rule *nisi*, had returned, " True, we received the affidavits, but gave them no force ; we heard the evidence, and upon the merits, in the exercise of our discretion, we set aside the verdict," could the Supreme Court rightfully have controlled that discretion? In *Ex parte* Bacon & Lyon, in the same volume, p. 393, in the matter of vacating an order setting aside a default by the Common Pleas, the same court furnishes an answer to this inquiry: " The Common Pleas must be their own judges, upon the circumstances before them, whether they will set aside a default upon the merits. This is so much a matter of discretion, that we will not interfere by *mandamus*."

Another case occurs in 9 Mass. Rep. 370 (Commonwealth v. The Justices of the Sessions for the County of Middlesex), where the Common Pleas had set aside a verdict of a jury, which found that the owner of land over which a highway had been laid out, had sustained no damage thereby ; and the Supreme Court awarded an alternative *mandamus* to the Common Pleas, to receive and record the verdict, or to show cause &c. The point in this, as in the preceding case, was not discussed ; no authority is cited, and it does not appear to have received much consideration. Besides, a note by Mr. Rand, the editor of the 3d edition, clearly shows, that it was, in effect, controlling the discretion of the primary court, and was, therefore, unwarranted either upon principle or authority. This case was pressed upon the same court, differently organized, in Gray v. Bridge, 11 Pickering's Rep. 189 ; but the court said : " This application [to set aside the order granting a new trial, and to enter judgment on the verdict] is founded on the supposed error of the court below in admitting proof of the confessions of Usher, which, the petitioner's counsel contended, were not competent evidence. But in deciding this case, it is not necessary to consider the question as to the competency of the evidence, because we think it very clear, that the Court of Common Pleas had a

discretionary power to grant a new trial, if the justice of the case, in their opinion, required it, and that we ought not to attempt to control or coerce the discretion of that court." This decision conforms to the law, as we understand it, and accords, too, with the English cases upon that doctrine.—See 2 Bar. & Cres. 286; 4 B. & Adol. 300; 1 Chitty's Rep. 643; *ib.* 37; 2 *ib.* 257; 3 Adol. & El. 725. The case last cited bears a striking analogy to this, in some respects. Hewes was indicted for administering poison to three mares, in some meal, of which they ate and died. The jury returned their verdict as follows: "Guilty by mischance." His counsel insisted that the verdict amounted to an acquittal; but the chairman of the Criminal Court told them to retire and find him either guilty or not guilty. They retired, and returned a verdict: "Guilty, but recommended to mercy." The chairman asked them on what ground they made their recommendation. They replied, "We recommend to mercy on the ground that he did not do it with a malicious intent, but did it to benefit the condition of the horses." Thereupon the last verdict was received, and sentence of conviction entered. The motion was made by the defendant's counsel, to the King's Bench, for a *mandamus*, to cancel the alteration; but it was refused. Littledale, J., said: "I rest my judgment, however, upon the broad ground, that we have no right to interfere, in this respect, with the practice of the court below." Patteson, J.—"I have always understood that this court might send a *mandamus* to an inferior court to do its duty, in general terms, but not to do a particular thing; as to make an alteration, &c., in the minutes." Williams, J., said: "The writ is granted only to set parties in motion, where they have refused to act."

But it is unnecessary to multiply authorities. Although this court has the power to control and supervise the action of the inferior courts, yet this must be done in a manner recognized by law, and so as to leave them untrammeled in the exercise of the discretionary powers vested in them.

Let the motion be denied, with costs.