# CASES DETERMINED

# August Term, 1921.

---

## WILL OF JOHNSON.

*April 7—September 23, 1921.*

*Wills: What law governs: Law as of time of death: Subscribing witnesses:₂Competent witnesses: Who may testify: Primary · and secondary evidence.: Statutes: Presumption against change from fundamental principles.*

1. A will is ambulatory during the life of its maker and is in effect reiterated as his testament at each moment of his life after its execution, and is governed by the law existing at the time when it takes effect, upon the testator's death.
2. Under sec. 2284, Stats. 1898, as amended by ch. 128, Laws 1905, providing that all gifts made in a will to a subscribing witness shall be wholly void unless there be two other competent witnesses to the same, two other competent *subscribing* witnesses are required, and not merely two other persons who can testify to facts showing the execution of the will in conformity with the statute, as the phrase "witness to a will" means one who has attested the will by subscribing his name thereto.
3. The testimony of the subscribing witnesses to a will constitutes primary evidence of its execution, and other or secondary evidence cannot be resorted to for that purpose until after a showing that the subscribing witnesses are dead, beyond the jurisdiction of the court, or are *non compos mentis.*
4. The common law of this country is that all of the subscribing witnesses must be produced when a will is offered for probate, unless the impossibility of producing them is made to appear; and the only modification of this rule in this state is in sec. 3788, Stats., providing that if there is no objection to the probate of a purported will the court may, in its discretion, grant probate on the testimony of one subscribing witness only.

5. A mere bystander is not a witness to a will, much less a competent witness; and his testimony could be introduced only upon a showing that the primary evidence could not be produced.

6. The presumption in construing statutes is against any radical change of legislative policy, and it is presumed that there is no intention to depart from any established policy of the law or to innovate on fundamental principles.

ROSENBERRY and ESCHWEILER, JJ., dissent.

APPEAL from a judgment of the county court of Racine county: M. S. SHERIDAN, Acting Judge. *Affirmed.*

For the appellant there was a brief by *Wallace Ingalls,* attorney, and *Simmons & Walker,* of counsel, all of Racine; and the cause was argued orally by *Mr. John B. Simmons* and *Mr. Ingalls.*

For the respondents there was a brief by *McCulloch, McCulloch & Dunbar* of Chicago and *Thompson, Myers & Kearney* and *Hand & Quinn* of Racine, and a separate brief by *Thos. M. Kearney, Jr.,* of Racine, guardian *ad litem;* and the cause was argued orally by *E. B. Hand* and *Thos. M. Kearney, Jr.*

The following opinion was filed May 31, 1921:

OWEN, J. This is an appeal from an order or decree of the county court of Racine county construing the will of Theodore W. Johnson, deceased. The case was here on a former appeal from an order admitting the will to probate, and is reported in 170 Wis. 436, 175 N. W. 917, to which reference may be had for facts supplemental to those which will appear in this opinion.

The will of Theodore Johnson constituted *Mrs. L. C. Hahn* the principal beneficiary. She was a witness to the will. The question involved on the former appeal was whether she could testify to the execution of the will. It was there held that she could. The question presented on this appeal is whether *Mrs. Hahn* is entitled to the bequest made to her by the terms of the will. The county court held that

the devise and legacy to the said *L. C. Hahn* was and is void because she is a subscribing witness to the will and said will is not attested or subscribed by two other competent witnesses.

There is no serious contention but the law as it existed at the time of the death of the testator is the law that governs as to the question whether *Mrs. Hahn* can take under the will.

"A will is ambulatory during the life of its maker. It is, in effect, reiterated as his testament at each moment of his life after its execution, including the last moment, and is governed by the law existing at the time when it takes effect, upon the testator's death." *Will of Kopmeier,* 113 Wis. 233 (89 N. W. 134) at p. 239.

This fact is mentioned at the outset because it is claimed that the statute which, concededly, controls in this case was amended during the interim between the execution of the will and the death of the testator. That statute is sec. 2284. Prior to the enactment of ch. 128, Laws 1905, that section provided as follows:

"All beneficial devises, legacies and gifts whatsoever, made or given in any will to a subscribing witness thereto, shall be wholly void unless there be two other competent subscribing witnesses to the same; but a mere charge on the lands of the devisor for the payment of debts shall not prevent his creditors from being competent witnesses to his will."

By ch. 128, Laws 1905, that section was amended by voiding gifts made to the husband or wife of a subscribing witness, as well as to the subscribing witness himself, and by dropping out the word "subscribing," so that it now provides that such devises, legacies, and gifts "shall be wholly void unless there be two other competent witnesses to the same." As so amended the section now reads as follows:

"All beneficial devises, legacies and gifts whatsoever, made or given in any will to a subscribing witness thereto,

or to the husband or wife of a subscribing witness thereto, shall be wholly void unless there be two other competent witnesses to the same; but a mere charge on the lands of the devisor for the payment of debts shall not prevent his creditors from being competent witnesses to his will."

It will be seen that the purpose of the statute is to void gifts made to a witness to a will, so that a subscribing witness may be a competent witness and the will be established by the testimony of the subscribing witness, unless the will cannot be established without his testimony. That, at least, was clearly the purpose of the statute as it existed prior to the amendment of 1905. It is not seriously disputed that such is the present purpose of the statute, but it is contended that the bequest is saved to the attesting witness if there is another person who can testify to facts showing an execution of the will in conformity with the requirements of the statute. This contention is based on the theory that the amendment dropped out the word "subscribing" and hence the bequest is now saved to a subscribing witness if there is any other competent witness to the same.

It is said that it is not necessary that a competent witness be a subscribing witness. Our first suggestion in response to this contention is that the phrase "witness to a will," or any other written instrument, has a well settled meaning not only in common parlance but in the law. A witness to a deed means a witness who has attached his signature to the deed. A witness to a will means one who has attested the will by subscribing his name thereto. Furthermore, the statute as it now exists requires two other competent witnesses to the will. We take it that the term "competent" as used in this connection means something more than a witness who is free from the many disqualifications visited upon persons by the common law; that is to say, it means not only a person who is under no disability to testify generally in a court of justice, but it means a person who is under no disability to give testimony which will establish the instrument as the will and testament of the testator.

It has been the ruling of courts ever since the statute of frauds required certain instruments to be in writing and signed in the presence of witnesses, that the testimony of the subscribing witnesses constituted primary evidence of the execution thereof by the parties bound thereby, and that no other evidence of such fact could be given until the person seeking to establish the instrument demonstrated his inability to produce the subscribing witnesses because of their death, their absence from the jurisdiction of the court, or that they were *non compos mentis.* It has been universally held that until such showing has been made on the part of him who seeks to establish the instrument, secondary evidence could not be introduced to show the fact of execution. 2 Wigmore, Evidence, § 1287 *et seq.,* and note to *Garrett v. Hanshue* (53 Ohio St. 482) 35 L. R. A. 321, where the general rule upon this subject is summed up as follows:

"The general rule is that the attesting witness to a written instrument is regarded as the person who must be called to prove its execution when he can be had, as it is said that the parties selected him to enable them to refer the execution of the document to him in case any question should arise over its execution. His evidence is regarded as the best evidence, and must be used when the execution is in dispute."

This is a general rule applicable to all written documents which by law are required to be attested by subscribing witnesses. From the time when wills were required to be in writing and attested by subscribing witnesses it has been commonly understood that the will must be proved by the testimony of a subscribing witness if he could be produced, and that other or secondary evidence could be resorted to for that purpose only after a showing that the subscribing witness was dead, or beyond the jurisdiction of the court, or was then *non compos mentis.*

Questions have arisen in some jurisdictions as to whether it was necessary to call all of the subscribing witnesses. *Thornton's Ex'rs v. Thornton's Heirs,* 39 Vt. 122; *Denny*

*v. Pinney,* 60 Vt. 524, 12 Atl. 108; *Chase v. Lincoln,* 3 Mass. 236. But it has never been doubted that the production of some of the subscribing witnesses was necessary if their presence in court could be secured. In the chancery courts of England it was held that all subscribing witnesses must be produced. As that was the only court which could by its decree establish a will, that doctrine has been held to be the common law of this country; and, except where modified by statute, the law is that all of the subscribing witnesses to a will must be produced unless the impossibility of producing them is made to appear. *Thornton's Ex'rs v. Thornton's Heirs, supra;* 1 Redfield, Wills, pp. 34–39.

The only statute of this state bearing upon this question is sec. 3788, which provides that, if no person shall appear to contest the probate of a will, the court may in its discretion grant probate thereof on the testimony of one of the subscribing witnesses only, and that if none of the subscribing witnesses shall reside in this state at the time fixed for proving the will, or if one or more of them shall have gone to parts unknown, and the court shall be satisfied that such witness, after due diligence used, cannot be found, it may, in its discretion, admit the testimony of other witnesses to prove the sanity of the testator and the execution of the will and may admit proof of his handwriting and of the handwriting of the subscribing witness. This is the only modification of the common-law rule requiring all of the attesting witnesses to be called, to be found in the statutes of this state, and it is a clear recognition that the testimony of the attesting witnesses is indispensable to the establishment of a will if they can be produced at the hearing or trial.

This brings us to the question whether a mere bystander is a competent witness to a will. In this case the subscribing witnesses, including *Mrs. Hahn,* testified at the trial upon the question whether the writing propounded was in fact testator's will. Two or three bystanders also testified that

they were present at the time the will was signed, and testified to a number, if not all, of the facts required by statute ·for the legal execution of a will.   Now it is said that these bystanders constituted competent witnesses to the will, by reason of which fact there were two other competent witnesses to the will besides *Mrs. Hahn,* satisfying the calls of sec. 2284, so that the bequest to her does not fail.   When· the will was propounded for probate a contest was interposed.   It could not be admitted upon the testimony of one of the subscribing witnesses.   If one only were produced the will must be denied probate.   The question immediately confronting the proponents of the will was the production of · the subscribing witnesses or a showing that they could not be produced.   As a matter of fact they were both produced and both testified.   But supposing they had not testified?   Could the testimony of these bystanders have been introduced?   Universal authority answers the question in the negative.   Their testimony would constitute what the courts call secondary evidence of the fact of execution, and could be introduced only upon a showing that the primary evidence could not be produced.   Under the circumstances, therefore, their testimony was incompetent and inadmissible, and they were not competent witnesses to show the fact of a valid execution of the will.   The conclusion seems irresistible that these bystanders were not witnesses to the will, much less were they competent witnesses.   They witnessed a mere transaction.   To become what in common parlance as well as law is known and understood as a witness to the will required their identification therewith by the subscribing of their names thereto.   While they may have been able to testify to the fact that the testator signed this document under certain circumstances and in a certain manner, that in nowise identified them with the will so that they may be said to be witnesses to the same.

But it is asked, What was the purpose of the legislature

in dropping out the word "subscribing" in its amendment of sec. 2284, Stats., by ch. 128, Laws 1905? One very good answer to this inquiry is that the legislature undoubtedly considered it mere surplusage, which in fact it was, because under the law existing at that time a competent witness to a will must have been a subscribing witness. It is by no means unusual for the statute to use the mere term "witness" to a will when it is plain it means a "subscribing witness" to the will. That is evident from the last part of sec. 2284, which was unaffected by the amendment of 1905, providing: "but a mere charge on the lands of the devisor for the payment of debts shall not prevent his creditors from being competent witnesses to his will." Who will doubt that the words "competent witness" as there used, both before and after the amendment, meant a subscribing witness? When the word "subscribing" was dropped out of the preceding similar expression in the first part of the section it harmonized with the expression used in the last part of the section. Another instance of where the legislature refers to the subscribing witness to a will by the use of the mere term "witness" is sec. 3292. As a matter of fact, not only statutes but textwriters and judges commonly refer to the subscribing witnesses to a will as "witnesses."

But whether we are correct in our assumption that the legislature dropped out the word "subscribing" because it was mere surplusage, we cannot ascribe to the legislature a purpose of working such a radical change in the law as would result from the construction contended for by appellant. In the first place, the inquiry suggests itself, how, and by whom, and when is it to be determined whether a mere bystander is in fact a witness to a will? Is he a witness to a will because, perchance, he sees a testator sign his will and no more? Is he a witness to a will because he hears the testator declare the document to be his will and request the witnesses to sign the same, but does not see them sign? Is

he a witness to a will if he sees one of the attesting witnesses sign, but sees no more? In order to constitute him a witness to a will, must he be able to testify to all the facts showing a legal execution of the will? And if so, when, and where, and how is his status in such respect to be established? It will ofttimes happen that there will be no occasion for his giving his testimony in court, as where there is no contest, unless, forsooth, this amendment be held to operate to do away with the necessity of producing attesting witnesses to the will upon the probate thereof. Unless his testimony be given sometime during the course of the proceeding upon issues raised or some legitimate subject of inquiry, how is the court to tell whether he was a witness to the will or not? Is the witness at sometime to submit to a moot interrogation and cross-examination to enable the court to say whether he was in fact a witness to the will? Of course if he is to be held competent to take the place of a subscribing witness upon the hearing for the probate thereof, then it may be adjudged from his testimony so given; but is it to be held that the legislature contemplated such a radical change in the law by such inconspicuous action? Did the legislature intend, by the mere dropping out of the word "subscribing" in sec. 2284, to obviate the necessity of calling subscribing witnesses to establish the will, and thus do away with a principle firmly intrenched in the common law and tacitly recognized by the statutes of this state above quoted? The presumption in construing statutes is against any radical change of legislative policy. It is presumed that there is no intention to depart from any established policy of the law; to innovate upon fundamental principles. 2 Lewis's Sutherland, Stat. Constr. (2d ed.) p. 931, § 499.

The amendment by which the word "subscribing" was dropped out of sec. 2284 made two changes in that section. It disqualified the wife or the husband of a subscribing witness, in addition to the witness himself, from taking

under the will.   It also omitted the term "subscribing."
If the omission of that word is to have the effect for which
appellant contends, it was by far the more important of
the two changes and worked a more radical change in the
existing law.   Nevertheless, the title to the bill resulting in
ch. 128, Laws 1905, made no mention of this feature of
the bill.   It was entitled: "An act amending sections 2284
and 2285 of the statutes of 1898 and making valid wills
containing beneficial provisions in favor of husband or wife
of a subscribing witness by making such provisions void."
Not a word as to qualifying bystanders; not a word as to
constituting mere bystanders witnesses to a will; and not a
word as to obviating the necessity of producing subscribing
witnesses to establish the will.   We cannot think the legis-
lature had in mind any such sweeping change or innovation.
Had such been its purpose it certainly would have dignified
it by some mention of it in the title to the act.

Upon these considerations we cannot impute to the legis-
lature the purpose suggested by the appellant.   We do not
think it was the intention to change the law with reference
to the probate of wills or the competency of witnesses in the
least.   We do not think it was the intention to designate as
witnesses to a will a class of persons who had never before
been so regarded since wills were required to be subscribed
by attesting witnesses.

A case very similar to this arose in Iowa (*Will of Boycus*,
23 Iowa, 354), where the same conclusion was reached.

*By the Court.*—Judgment affirmed.

Rosenberry, J., dissents.

The following opinion was filed June 14, 1921:

Eschweiler, J. (*dissenting*).   "All men are liars" sang
King David; he said it in haste but permitted it to stand.

Nevertheless even under the old Hebrew law that one was financially interested in the result of a lawsuit did not, apparently, prevent his being sworn and giving testimony. Michaelis, Laws of Moses, vol. IV, p. 345, quoting the apostrophe to the man to be honored from Psalm 15, "He that sweareth to his own hurt, and changeth not."

Centuries afterwards and as early as the seventeenth century (1 Wigmore, Evidence, § 575), and at the time when juries first began to consider information as to the issues other than that which they themselves possessed as dwellers in the same neighborhood, this expression of the Hebrew poet was apparently crystallized into the common-law rule of evidence to the effect that a person financially interested in the issue of a lawsuit was unworthy of belief and therefore an *incompetent* witness.

This common-law rule excluding as incompetent any interested person, whether a party or a mere witness, was to a great extent adopted as part of the law of this state. This rule, however, has been slowly relaxed by legislative enactments. *Estate of Johnson,* 170 Wis. 436 (175 N. W. 917), at p. 450. The only basis suggested for such statutes as are here involved, under which a person situated as is the appellant *Mrs. Hahn* can have objection raised as to her legal capacity to testify concerning the execution of or her right to take under a will, is this old common-law rule excluding as incompetent and unworthy of belief a person having a financial interest in the matter involved. *Will of Lyon,* 96 Wis. 339, 340, 71 N. W. 362; *Will of Hoppe,* 102 Wis. 54, 55, 78 N. W. 183.

It may safely be asserted that all the changes, either by statute or judicial decision, from territorial days to the time of the present decision, on the subject of the admissibility of the evidence of one interested in the result, have been in the direction of relaxing and modifying this old common-law rule and permitting such matters to go to the credibility

rather than to the admissibility of such evidence. Whether because mankind is slowly growing less prone to lie or more skilful in sifting the wheat from the chaff, it is, fortunately, not necessary to here express an opinion. The fact remains of the steady march, by statute and judicial decisions, in the one direction.

It is held in substance by the majority opinion that the omission by ch. 128, Laws 1905, of the word *"subscribing"* in the phrase "shall be wholly void unless there be two other competent *subscribing* witnesses" as it appeared in sec. 2284, Stats., prior to that amendment, was either done inadvertently or because deemed surplusage, or in any event that such omission was not a sufficient declaration of legislative intent to make a substantial change in the law on this point. I cannot concur in any such backhanded compliment to the mental processes of the legislature in this particular instance and for the following among other reasons:

There is a substantial difference between one who is a *competent* witness to the transaction involved in the making of a last will and one who is a *competent subscribing* witness to the same. By the very language of the statute as it stood and now stands and from the very nature of things, no one can properly be a *subscribing* witness to such a document who is not also a *competent* witness. But by no means does it follow that one who is a *competent* witness is necessarily only the one who also meets the definition of *competent subscribing* witness. The term *"competent witness"* describes the genus, the term *"competent subscribing* witness" defines the species; the former is the large circle, the latter the smaller and inclosed circle. That these two circles may often, from the very nature of the transaction involved, coincide, so far as contained numbers is concerned, can be readily seen, but that fortuitous coincidence is of no real weight in determining the question here presented.

If a testator desire to have his will admitted to probate

Will of Johnson, 175 Wis. 1.

and his wishes therein expressed carried out, he must at the time of signing it, from the field of competent witnesses then present, call two at least of such *competent* witnesses to subscribe their names to such document in his presence and in the presence of each other. Such selection of such particular competent witnesses in nowise creates their competency or lessens the competency of other witnesses equally well qualified in law to testify as to the transaction. They must be *competent* witnesses or they cannot be *competent subscribing* witnesses; therefore their competency must exist before and at the time they subscribe; it is neither the gift nor the creation of the testator; it is an attribute of the witness alone.

I think the distinction was clearly recognized by one who surely had a familiarity with the subject and especially in this state, in the expression by the late Mr. Chief Justice CASSODAY in his work on Wills, sec. 210:

"Although other persons besides those who subscribe to the will as witnesses *may be competent* to testify as to its execution, yet it should be remembered that *subscribing* witnesses have a special importance in all controversies over the execution of wills."

In the state of Pennsylvania, for instance, from an early date and apparently up to the present moment, it has been held under a statute on this subject containing the following language: "shall be proved by the oaths or affirmations of two or more competent witnesses," that such *competent* witnesses need not be *subscribing* witnesses. *Frew v. Clarke,* 80 Pa. St. 170, 179, decided as early as 1833. It was also therein declared that although one such competent witness was the sole beneficiary and to a legacy of $75,000, his testimony was properly received.

In *McClure v. Redman,* 263 Pa. St. 405, 107 Atl. 25, decided in 1919, the existence of the doctrine was clearly recognized, and it was further held that, even with the provision requiring *two* or more witnesses, the requirement

may be met by circumstantial proof, one witness alone being present at the time of the execution of the will.

Manifestly, in the state of Pennsylvania at least, the use of the term "a witness to a will" would not imply that such witness was a subscribing witness, although much stress is laid in the majority opinion upon what is assumed to be the meaning of the term. It might be noted in passing, as to conveyances, that signing of witnesses is not essential to qualify one to testify as to facts showing the passing of title; such formality of subscription is only necessary in order that the instrument may be recorded. *Leinenkugel v. Kehl,* 73 Wis. 238, 40 N. W. 683; *Eadie v. Chambers,* 172 Fed. 73, 24 L. R. A. n. s. 879, and note.

The making of a last will and testament, which is defined by Blackstone as "the legal declaration of a man's intention, which he wills to be performed after his death," is his act and one thing; the statutory formalities which are necessary in order to permit the court having proper jurisdiction to administer the property under such declaration is another and separate thing and subject entirely to legislative control.

This court has gone as far as any court in the land in declaring the substantial nature of the right existing in the living to make disposition of his property after death and that it is of such a nature that it cannot be taken away by the legislature. *Nunnemacher v. State,* 129 Wis. 190, 202, 108 N. W. 627.

The solemn duty resting upon the courts in this state to effectuate the testator's lawfully expressed wishes irrespective of the desires of those remembered or unremembered in the document has been repeated so often as to become trite. *Will of Dardis,* 135 Wis. 457, 115 N. W. 332; *Will of Rice,* 150 Wis. 401, 405, 136 N. W. 956, 137 N. W. 778; *Will of Ball,* 153 Wis. 27, 141 N. W. 8; *Will of Duncan,* 154 Wis. 39, 48, 141 N. W. 1002; *Schoenwetter v. Schoenwetter,* 164 Wis. 131, 135, 159 N. W. 737; *Estate of Staab,* 166 Wis. 587, 590, 166 N. W. 326.

It has been declared by the former decisions in this matter that that which was presented as the last will of Theodore W. Johnson was his last will. The intention so declared in that document is now frustrated on the theory that the legislature did not sufficiently express an intention to change the statutory regulation of the formalities surrounding the execution of such a document to now permit the intention of the deceased to be carried out. I can see no substantial reason why a legislative intent to change is not clearly expressed by the change made in the statute by ch. 128, Laws 1905.

For convenience of comparison, that statute before and after the amendment is again here presented:

"All beneficial devises, legacies and gifts whatsoever, made or given in any will to a *subscribing* witness thereto, shall be wholly void unless there be two other *competent subscribing* witnesses to the same; but a mere charge on the lands of the devisor for the payment of debts shall not prevent his creditors from being *competent* witnesses to his will."

"All beneficial devises, legacies and gifts whatsoever, made or given in any will to a *subscribing* witness thereto, (or to the husband or wife of a *subscribing* witness thereto), shall be wholly void unless there be two other *competent* . . . witnesses to the same; but a mere charge on the lands of the devisor for the payment of debts shall not prevent his creditors from being *competent* witnesses to his will."

It is significant that the word "subscribing" as limiting the term "competent witness" appears twice in the statute before amendment; by the amendment it is stricken out once and again specifically inserted, so that the net result, the descriptive term *"subscribing* witness," stares one in the face as prominently and as often after the amendment as before. If, as suggested in the majority opinion, the term was considered surplusage in the phrase where it was omitted, the legislative mind evidently did not consider it surplusage in the clause in which it was left in the old statute and in the

new clause inserted. From the context it had exactly the same significance—no more, no less—in the phrase in which it was omitted, in the phrase in which it was left, and in the phrase in which it was inserted. To suggest that the legislature had surplusage in their minds in amending this statute and were aiming at brevity of expression only in so omitting it can hardly be considered, to say the least, as flattering to that body. If it was their purpose to merely shorten the statute by such process, that purpose fell stillborn.

No question can be raised but that, if the legislature had in so many words declared that they did intend that a gift should be held valid to one, a competent witness to the transaction involved in the making of a will, and who, at the request of the very testator, also subscribed the same to comply with legislative will, where there were others present just as conversant with what was said and done and whose testimony is available, the court would be bound to so hold. I can see no tremendous upheaval in the law of wills if such a conclusion were now upheld.

As yet neither constitution, statute, nor custom requires that the legislature should give any reasons for their amendments to existing statutes or their passage of new ones. No solemn declaration on their part is required as an explanation of changes made, for such, if given, might but add to the judicial labors.

If we view this question with the not unreasonable assumption that as a foundation of the legislative intent expressed in this amendment there was embodied the thought, as expressed by the late Mr. Chief Justice CASSODAY, *supra,* and which is recognized as the rule elsewhere, that others than subscribing witnesses could be competent witnesses to testify in a court of justice as to the essential facts concerning what a testator said and did, and further that the legislative mind had become imbued with the lofty and often expressed declarations of this court as to the sanctity to be

accorded the wish of a testator, and also wanted to still further encroach upon the old common-law fear of want of credibility in the testimony of interested persons, I can see no more simple and direct way to accomplish such purposes, which are so well and so entirely within the legislative field, than providing, as I think they have done, that when others than a beneficiary who were present at the time of the execution of the will are competent, that is not disqualified by law, and they do testify to sufficient facts to support the will, the wish of the testator and the gift to the beneficiary, although a subscribing witness, should both prevail. That there was no fanfare or flourish of legislative trumpets so declaring is not sufficient, in my view of it, to work what seems to me to be a judicial veto interposed by the majority opinion.

Weight is attached in the majority opinion to the fact that the subscribing witnesses to such a document are required, in case of contest, to be first called and their testimony given or their absence satisfactorily explained. This is entirely a matter of order of proof and has no bearing whatever upon the question of the competency of the witnesses. A person who participates in the making of a contract reduced to writing is no less a competent witness to the transaction because the rules of evidence provide that the document itself is the best evidence and must be first produced or its absence explained before oral testimony is taken as to its contents. The competency of such a witness is not at all dependent upon the production or nonproduction of the document. The same should be held in the instant situation. The mere fact that A. and B. are by certain rules of evidence required to be called as witnesses before C. can be permitted to testify has absolutely no bearing upon the question of the competency of C. under the other and independent rules of evidence. No authority is cited to the effect that a test of competency of a witness is to be determined upon a rule which relates solely to the order of proof or of first or

secondary evidence.  The competency of a witness does not rest in some twilight zone dependent upon the question as to whether some document or some other witness shall be first produced or sworn.

A mere glance at the statutes and decisions of the different state jurisdictions shows that the requirements of formalities requisite for the probate of a will are as varied as the jurisdictions, and there are none in which such formalities are not constantly changed and without any formidable preambles in the amending statutes either.  What is meat in one jurisdiction is poison in another.

In New York two attesting witnesses are required, each of whom shall sign his name as a witness at the end of the will at the request of the testator.  They both, however, do not need to be present at the time of signing.  *Hoysradt v. Kingman,* 22 N. Y. 372, 379.

In California, under a substantially similar statute, it was held that they must both be present.  *Estate of Emart,* 175 Cal. 238, 165 Pac. 707, L. R. A. 1917F, 866.

Under our present statute, sec. 2282, the signing by the witnesses must be done when both are present.  *Will of Griffith,* 165 Wis. 601, 608, 163 N. W. 138.  Formerly under the same statute before amendment such subscribing in the presence of both witnesses was not required.  *Will of Smith,* 52 Wis. 543, 547, 8 N. W. 616, 9 N. W. 665.

A substantial difference was recognized at common law and for a long period in many of the states of this country as to wills regarding real property and those regarding personal property, the latter not requiring the same formality as the former.  A will that would be void as to real estate for want of proper execution might nevertheless be valid as to personal property.  *Lake v. Warner,* 34 Conn. 483; *Ex parte Henry,* 24 Ala. 638.  The property here involved is substantially all personalty.

Many states expressly provide that a holographic will, that is one written and signed in the proper handwriting of a testator (some requiring that it shall be dated also), shall be valid though not attested or subscribed by a single witness. Rood, Wills, § 268. Such holographic will, valid in France, made by a citizen of Maryland sojourning in France, covering both real and personal property in Maryland, was properly admitted and administered in Maryland. *Lindsay v. Wilson,* 103 Md. 252, 63 Atl. 566, 2 L. R. A. N. s. 408, and note.

Undoubtedly the courts in this state would have to hold the same as to such foreign wills under sec. 2283, Stats., providing for recognition of wills executed outside of this state under the there required formalities, conditioned only that it be in writing and subscribed by testator. The provision for subscribing witnesses is here conspicuous by its absence.

In *Children's Aid Society v. Loveridge,* 70 N. Y. 387, it was held that an executor to a will may nevertheless be a competent subscribing witness under a statute quite similar to the one before us. It would appear furthermore from the language of the decision in that case that other than subscribing witnesses who were present at its execution were sworn upon the hearing just as in the case at bar and their testimony in effect held admissible and sufficient to sustain the will. Page 392.

In *Rugg v. Rugg,* 83 N. Y. 592, 594, the testimony of the two subscribing witnesses created a doubt as to some of the facts essential to be shown for a proper execution of a will. To supply this defect the executor was held to be a competent witness to testify to the essential features so left in doubt and the will held properly executed. The probate of a will should not be rejected because one of the subscribing witnesses testifies in contradiction to the other and against

the document. *Will of Grant,* 149 Wis. 330, 337, 135 N. W. 833; *Matter of Spooner,* 13 Mills' Reports (N. Y. Sur.) 482.

These points are dwelt upon merely as indicating the vast variety of legislative and judicial views on the subject of·statutory formalities, their flexibility and the constant changes made; that no property rights are considered as invaded or the established order of things overthrown by such changes.

I think the judgment should be reversed and it be held that *Mrs. Hahn,* as designated beneficiary in the admitted will of Theodore W. Johnson, is entitled to take just as the testator therein declared she should take.

DOERFLER, J., took no part.

A motion for a rehearing was denied, with $25 costs, on September 23, 1921.