WILL OF GARRECHT: OGRENTZ, Appellant, vs. WILLISON and others, Respondents.

*April 3—May 8, 1928.*

*Wills: Due execution: Testator not signing in presence of witnesses: Competency of testator: Disinheritance of child: Evidence: Sufficiency.*

1. A testator need not sign his will in the presence of witnesses, it being sufficient under sec. 238.06, Stats., if the maker of the will acknowledges in some form that it is his will and requests the witnesses to subscribe thereto as such. p. 599.
2. Under said sec. 238.06, the testimony of a subscribing witness contradicting the non-essential allegation in the attestation clause that the will was signed by the testatrix in the presence of the witnesses does not constitute a failure of proof of due statutory execution of the document as a will. p. 599.
3. The death or unavoidable absence of a subscribing witness to a will makes the testimony of the other subscribing witness sufficient in case of a contest. p. 600.
4. A will wherein testatrix stated she left nothing to the contestant, her daughter, because such daughter had ill-treated her and because of advances made to her, was properly admitted by the county court, where the evidence showed that the statement as to the ill-treatment was neither irrational, unwarranted, or untrue, although it did disclose that there were no substantial advances made to the daughter prior to the making of the will. p. 601.

APPEAL from an order of the county court of Milwaukee county: JOHN C. KAREL, Judge. *Affirmed.*

Petition for proof of the will of Rose Willison Garrecht was filed by a son in the county court April 6, 1926.

Objections were filed April 26th by appellant *Bessie Ogrentz,* the oldest child. A hearing was had in March and June of said year, and by order of August 13, 1927, the docu-

ment was established as a valid will and admitted to probate. From such probate this appeal is taken.

The deceased, some fifty-two years old at the time of her death, was the mother of six children by her first husband, William Willison, who was divorced from her in November, 1920, after a prior suit for divorce by her against him, started a few years before, had been dismissed. November 9, 1921, she and *Michael Garrecht* married and continued to live in the boarding house she had successfully conducted for many years. There were no children by this marriage. *Garrecht* had no property.

February 24, 1922, at the sole direction of the deceased, the form of a will for the deceased and another for *Michael Garrecht* were drawn by one Frank Ammon, a lawyer who had done business for the deceased before that but who died prior to Mrs. Garrecht. Both wills were filed in the county court on March 3d by Mr. Ammon.

Following the signature of Mrs. Garrecht on the instrument propounded as her last will was the following attestation clause:

"Signed, sealed, published, and declared by the said Rose Willison Garrecht, as and for her last will and testament, in the presence of us, who, at her request, in her presence and in the presence of each other, have hereunto subscribed our names as attesting witnesses.

"Augusta Seidler, Milwaukee, Wisconsin.

"Anton Larson, Milwaukee, Wisconsin."

For the appellant there was a brief by *Gugel & Greenthal* of Milwaukee, and oral argument by *T. M. Thomas* of Ladysmith.

For the respondents there was a brief by *Wm. A. Schroeder* and *Jacob S. Rothstein,* and *Rowan, Kalaher & Stoecker,* attorneys for *Michael J. Garrecht,* all of Milwaukee, and oral argument by *F. J. Rowan.*

ESCHWEILER, J. The main objections urged to the proceedings below are: that there was no due execution of the instrument; that the alleged execution of the same was

procured by undue influence exercised upon the maker; that she was at the time of unsound mind; that she had an undue and unnatural obsession towards, and hatred of, the contestant, her oldest child.

Upon the hearing the death of said witness Anton Larson was shown. The other witness, Mrs. Seidler, who had known the deceased for many years and had been employed by her, testified that she was called to the sitting room in the boarding house where there were present Mr. Ammon and Mr. and Mrs. Garrecht. That the signature of the deceased was then on the will. That Mrs. Garrecht said that the document was her will, that she had signed it, and that she wanted Mrs. Seidler to witness it and handed her the pen. At the same time some one had called Anton Larson from another part of the house, and that he was inside the sitting-room door where he could hear and see what was being done and was so placed at the time Mrs. Seidler signed. That immediately thereafter a similar statement and request were made by Mrs. Garrecht to and of Mr. Larson, who thereupon took the pen from Mrs. Seidler and signed his name.

*Michael Garrecht,* the widower, was also called as a witness, and, over proper objections to his competency as a witness, was permitted to testify as to facts surrounding the execution of the will, but he said that the signing by Mrs. Garrecht was done in the presence of both of the witnesses, and further that the will which had been drawn for him to execute and received here in evidence, and which gave all his property to Mrs. Garrecht, was signed by him at the same time and by the same two witnesses. Mrs. Seidler, however, was positive in her testimony that she signed only Mrs. Garrecht's will, although her signature and that of Larson appear on the other.

Had the trial court sustained appellant's objection to *Michael Garrecht,* testatrix's husband, testifying as to the execution of the will, he being a substantial beneficiary there-

under, nevertheless due and proper execution of the will was proven by the testimony of the surviving subscribing witness, Mrs. Seidler. While it is true her testimony contradicts the recital in the above quoted attestation clause to the effect that the will was signed by Mrs. Garrecht in the presence of the witnesses, yet such a recital is of an unessential though very proper step, to have taken. It is sufficient under sec. 238.06, Stats., if the maker of the will acknowledges in some form that it is his will and requests the witnesses to subscribe thereto as such witnesses. Each subscribing witness under our statute must sign in the presence of the testator and the presence of each other. This latter provision was inserted in the statute after the decision of *Will of Smith,* 52 Wis. 543, 547, 8 N. W. 616, 9 N. W. 665.

Our statute does not expressly require that the testator shall sign in the presence of the witnesses, and the general rules of law governing such matter do not so require. *Skinner v. American Bible Soc.* 92 Wis. 209, 212, 65 N. W. 1037; *Flood v. Kerwin,* 113 Wis. 673, 89 N. W. 845; *Nunn v. Ehlert,* 218 Mass. 471, 475, 106 N. E. 163; Cassoday, Wills, sec. 114; 1 Alexander, Wills, p. 599; Thompson, Wills, p. 392.

Although there is language in the case of *Will of Hawkinson,* 143 Wis. 136 (126 N. W. 683), at p. 138, suggesting that it is essential that the court be convinced that the testator signed it in the presence of witnesses, yet this is substantially qualified on page 139 to conform with the above stated rule, viz.: that an acknowledgment by the testator in the presence of witnesses of his purpose and a request to the witnesses to attest by their signatures, rather than the formality of signing his name to the document in their presence, is the essential. So that even though where, as here, the testimony of the subscribing witness in that respect contradicts such nonessential allegation in the attestation clause, it is not a failure of proof of due statutory execution of the document as a will.

There can be no serious question now raised, after the repeated decisions on the subject, but that the death or unavoidable absence of a subscribing witness to such a document makes the testimony of the other subscribing witness in cases of contest of a will sufficient. *Estate of Rosencrantz,* 191 Wis. 109, 112, 210 N. W. 371; *Will of Johnson,* 175 Wis. 1, 5, 183 N. W. 888; *Will of Maresh,* 177 Wis. 194, 196, 187 N. W. 1009; *Will of Hawkinson,* 143 Wis. 136, 139, 126 N. W. 683; *Gillmor's Will,* 117 Wis. 302, 94 N. W. 32; *Jones v. Roberts,* 96 Wis. 427, 432, 70 N. W. 685, 71 N. W. 883. That Mrs. Seidler, the subscribing witness to the will offered for probate, positively denied her signature on the other document offered in evidence as being the will executed by *Michael Garrecht* at the same time, we deem immaterial on the question of due execution of the only will properly before the trial court on the hearing below.

The trial court was therefore clearly right in holding that there was due proof of the due execution of the will of Mrs. Garrecht so offered for probate.

On the question whether or not the document so executed was her real will, we find no grounds upon which we can overrule the determination of the trial court. Nor is there a situation presented which casts any substantial doubt upon the correctness of that conclusion.

The contestant here had lived with and helped her mother in the boarding house until the time of her marriage in 1915, she then being eighteen and one-half years old. For several months thereafter she with her husband lived in the house and continued to assist her mother. Later she lived a few blocks away and assisted quite regularly at certain times in the heavy work incident to the conducting of a large boarding house. For a short period soon after the marriage this daughter permitted the mother, with several of the younger children who were quarantined, to live for such time in the contestant's house. While disputes were going on between the deceased and her then husband, contestant's father, she

had the father live with her. Subsequently trouble arose between contestant and a younger daughter and proceedings were had in the juvenile court in connection with charges made by her against such younger sister.

Shortly after the divorce between her parents the contestant brought suit in civil court on a claim for $1,170 for wages against her mother, which suit appears to have terminated in the mother's favor.

There is evidence that some or all of these situations caused the mother to become bitterly incensed against the contestant here, her oldest child, and she frequently expressed such resentment to others, and at three several places in the will she states, in substance, that she leaves nothing to contestant because of advances made to her and because of the ill-treatment accorded the mother by the daughter for several years.

Although the testimony shows that prior to the making of the will no substantial gifts or advances were made other than small gifts at the time of contestant's marriage, yet the statement as to advances was not, under the testimony, a false one, and certainly it cannot be said that the statement as to ill-treatment by the daughter of the mother showed either an irrational, unwarranted, or untrue statement.

The property as divided in the will was so distributed that the husband, the widower, received between $5,000 and $6,000 as his share, and there will be distributed among five children, contestant excluded, beneficiaries under the will, share and share alike, the sum of $18,000 to $19,000.

Mrs. Garrecht, after a long life of toil, had the right to dispose of it as she wished and exclude, if she so willed, this one child with whom she was not pleased. She made no change in this will during the four years that elapsed between its execution and the death, and the trial court was fully warranted by the evidence in sustaining it.

*By the Court.*—Order affirmed.